AMHERST BUILDERS ASSN., APPELLANT, *v.*
CITY OF AMHERST ET AL., APPELLEES.

[Cite as Amherst Builders v. Amherst (1980),
61 Ohio St. 2d 345.]

(No 79-543—Decided March 26, 1980.)

346

*Elden & Ford Co., L.P.A.,* and *Mr. Edward Kancler,* for appellant.

*Messrs. Squire, Sanders & Dempsey* and *Mr. James H. Woodring,* for appellees.

SWEENEY, J.   The primary issue presented by this appeal is whether a municipality has the authority to exact from a new user of its sewage system a charge which exceeds the administrative cost to the city of making the connection. In answering this question in the negative, the Court of Common Pleas relied heavily on its interpretation of *State, ex rel. Waterbury Development Co.,* v. *Witten* (1978), 54 Ohio St. 2d 412. While the village therein, at page 413, had argued, as does appellee herein, that the purpose of a tap-in fee was "to apportion the cost of the***system equitably between prior users and new users," it had attempted to sustain the validity of the charge as a valid exercise of either its police power or its revenue-raising power. This court was not persuaded by either attempt. As an exercise of the village's police power, the fee could not exceed the actual cost of ensuring a secure and reliable connection; and since collection of the fee did not comply with statutes relating to taxes and special assessments, it was not a valid revenue-raising measure. However, *Water-*

*bury* is distinguishable because that opinion did not address the question presented herein: whether such a charge could be collected pursuant to a municipality's plenary power under Section 4, Article XVIII of the Ohio Constitution.[2]

It is well-settled that Section 4, Article XVIII, grants a municipality broad power to own and operate public utilities,[3] and that a municipal sewage system is a type of "public utility" envisioned by that constitutional provision.[4] There can be no doubt that, in order to exercise that power, a municipality must be able to impose charges upon the users of the system to defray the costs of both its construction and operation.

Appellee asserts that this constitutional power allows it to impose a tap-in fee on new users, which attempts to "equalize the burden" of the cost of creating an adequate sewage system with present users. This contention is based on the premise that, while construction of the present sewage system was presumably financed by the existing users,[5] unimproved property within the service area received a benefit from the mere existence of the system. When this unimproved land is developed, the tap-in charge is imposed so that these new users will now assume a fair share of the original construction costs, thereby reimbursing the community for the previous benefit received.

While this court has not previously addressed this specific issue, courts in other states have sustained the validity of such connection fees. See, *e.g., Home Builders Assn. of Greater Salt Lake* v. *Provo City* (1972), 28 Utah 2d 402, 503 P. 2d 451; *Hayes* v. *Albany* (1971), 7 Ore. App. 277, 490 P. 2d 1018; *Air-*

---

[2] The fees collected pursuant to Ordinance 913.07 are earmarked specifically for a Sewer Revenue Fund, while the tap-in fees in *Waterbury* were not so earmarked for use. This distinction may have foreclosed an argument based on Section 4, Article XVIII, in that cause.

[3] See, *e.g., State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313; *Pfau* v. *Cincinnati* (1943), 142 Ohio St. 101; and *State, ex rel. Toledo,* v. *Weiler* (1920), 101 Ohio St. 123, 126-127.

[4] See *Britt* v. *Columbus* (1974), 38 Ohio St. 2d 1, paragraph two of the syllabus.

[5] Such projects are normally financed either by special assessments or by bond issue. In the first instance, improved property is assessed at a much higher level than unimproved land. In the second instance, the debt created by the bond issue is normally reflected in user rates. Thus, in either case, the existing user of the system bears the brunt of its construction costs.

*wick Industries, Inc.* v. *Carlstadt Sewerage Authority* (1970), 57 N.J. 107, 270 A. 2d 18; and *Associated Homebuilders* v. *Livermore* (1961), 56 Cal. 2d 847, 366 P. 2d 448. The New Jersey Supreme Court in *Airwick Industries, supra,* at page 122, adopted and aptly summarized the concept espoused by appellee, when it concluded that "***the installation and construction costs***should in the first instance be financed by the actual users but should ultimately be borne by all the properties benefited, including the unimproved lands. For that reason there was provided a charge in the nature of a connection charge to be imposed upon unimproved properties in order that they assume a fair share of the original construction costs when they become improved properties."

In *State, ex rel. Stoeckle,* v. *Jones* (1954), 161 Ohio St. 391, we endorsed this concept of cost equalization in an analogous situation. There the municipality had partially funded the construction of a sewage system by levying special assessments. However, the assessments on unimproved property were only a fraction of those on improved property. In order to rectify this inequity, the village adopted an ordinance which established a $300 tap-in charge on subsequently improved property. Quoting from *Hermann* v. *State, ex rel. Cooper* (1896), 54 Ohio St. 506, the *Stoeckle* court observed, at page 394:

" 'The rule in question was adopted and properly conditioned to require that those who had not paid assessments should, when desiring to use the sewer, accept an *equal burden* with those who had. We cannot say that the rule is unreasonable.' " (Emphasis added.)

A tap-in provision, very similar to the instant ordinance was sustained as a legitimate exercise of municipal power under Section 4, Article XVIII, in *Englewood Hills* v. *Englewood* (1967), 14 Ohio App. 2d 195. The court therein found that the only limitation on this power was that the charges must be fair and reasonable and bear a substantial relationship to the per unit cost of providing the sewer service. While we agree with this view of municipal authority under Section 4, Article XVIII, it should also be added that the fees collected may not be used for general revenue purposes, but rather must be segregated into a specific sewer fund.

Having upheld the validity of such a charge in principle, we must now determine whether the instant fees bear a substantial relationship to the entire cost of providing sewer service to the new user. In estimating this cost, appellee's expert witness used an "investment basis" calculation to determine the "capital cost" of each connection; *i.e.*, the cost of facilities required to serve each new user of the system. This was done by estimating the replacement cost of the existing system (excluding sewer lines contributed by developers), then deducting both depreciation and the remaining debt on the system. This figure was then divided by the present number of users. The result, which could be considered each user's investment or equity in the system, was an average of $1,186 per connection.

Obviously, the schedule of fees in Ordinance 913.07 was not based on this "investment basis," but was instead derived from Environmental Protection Agency estimates of sewage flow. However, this distinction does not necessarily render the fees unreasonable. By keying the schedule to the E.P.A. guidelines, the city is attempting to make the fee of each new user proportionate to the gallons of sewage flow a particular type of structure contributes to the system. Thus, the fee attempts not only to equalize the burden between present and new users, but also among the latter, depending on the burden each puts on the system. While it is true that the $1 per gallon charge is not a mathematically precise estimate of the cost of service to each new user, appellant is hard-pressed to assert this as a basis for invalidating the ordinance when one considers that the resultant $400 fee is much less than the figure derived from a more precise analysis. We thus uphold Amherst Codified Ordinance 913.07 as a valid exercise of the city's authority under Section 4, Article XVIII.

The Court of Appeal's application of R. C. 2723.03 was unnecessary to its judgment. However, since we believe that court's conclusion on that question to be erroneous, a further discussion is in order. The court below determined that the tap-in charge was an "assessment" as that term is used in R. C. 2723.03, so that appellant's failure to file a written protest with its payment of the fees precluded recovery of the

fees, even if it had prevailed in having the ordinance invalidated. This conclusion disregards the fact that an assessment is normally levied against all property in the service area, unimproved as well as improved, while this fee is only imposed when a new user desires to connect to the sewer system.

In *Stoeckle, supra* (161 Ohio St. 391), at page 393, this court recognized this distinction, stating that "the charge is not in fact a second assessment but***is a charge for permission to connect with the sewer***." See, also, *State, ex rel. Gordon,* v. *Taylor* (1948), 149 Ohio St. 427, 434, declaring that "***it is well established that charges for sewer services***are neither taxes nor assessments." Thus we find the provisions of R. C. 2723.03 to be inapplicable to this action.

For the foregoing reasons the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN, LOCHER and HOLMES, JJ., concur.

CELEBREZZE, C. J., dissents.

HOLMES, J., concurring. I am in agreement with the majority that a municipality may, pursuant to its plenary power under Section 4, Article XVIII of the Constitution of Ohio, charge a tap-in fee which reasonably equalizes the cost of the water system among current and future users. A charge system whereby new users assume a fair share of the original construction costs is a reasonable exercise of the municipality's constitutional power to construct, operate and maintain utilities.

In this regard, it seems to me that *State, ex rel. Waterbury Development Co.,* v. *Witten* (1978), 54 Ohio St. 2d 412, can only be distinguished, in that the facts in that case show that the municipality, in adopting the "equity value" tap-in fee ordinance, had not provided for earmarking of the funds for the water system. Were it not for that difference between this case and *Waterbury,* I would be constrained to conclude that *Waterbury* would have to be overruled in order to arrive at our determination herein.