BUILDING INDUSTRY ASSOCIATION OF CLEVELAND
AND SUBURBAN COUNTIES, Appellee,

v.

CITY OF WESTLAKE et al., Appellants.*

[Cite as *Bldg. Industry Assn. of Cleveland & Suburban
Ctys. v. Westlake* (1995), 103 Ohio App.3d 546.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67205.

Decided May 22, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1465, 656 N.E.2d 1300.

*Grendell & Marrer Co., L.P.A.*, and *Timothy J. Grendell*, for appellee.

*Rademaker, Matty, McClelland & Greve, Robert C. McClelland* and *Bryan P. O'Malley*, for appellants.

JAMES D. SWEENEY, Presiding Judge.

Defendant-appellant city of Westlake, Ohio appeals from the trial court's granting summary judgment in favor of plaintiff-appellee Building Industry Association of Cleveland and Suburban Counties ("BIA") in this declaratory judgment action with respect to the constitutionality of Westlake Codified Ordinance No. 1990–166, an ordinance adopted on February 7, 1991, and which established an impact fee upon new residential, commercial and industrial construction the stated purpose of which was to raise funds "for adequate public parks, playgrounds and recreation facilities within the City of Westlake." See

preamble to the enabling legislation for Westlake Codified Ordinance No. 1990–166, a copy of which is attached in the Appendix to this opinion. The payment of the impact fee was a condition for issuance of a building permit. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that Westlake first enacted a park impact fee ordinance on the development of new residential and commercial construction in 1986, and the fees derived from this legislation were segregated in a "park and recreation trust fund." See Westlake Codified Ordinance No. 1986–14 ("Ord. No. 1986–14").

In 1987, with the city of Westlake experiencing rapid expansion and development, the Westlake Planning Director proposed further analysis of the use of impact fees in general and Ord. No. 1986–14 in particular. In the fall of 1988, the Westlake Planning Director had identified development of a new impact fee structure among his department's goals for 1989, which was supported by the direction of Mayor Clough.

On February 2, 1990, the mayor approved Westlake Codified Ordinance No. 1990–13, which authorized the purchase by Westlake of Hedgewood Golf Course on Center Ridge Road in Westlake for the purchase price of $950,000.

The findings and recommendations of the Westlake Planning Director regarding the proposed new impact fee structure were sent to the mayor and council on July 11, 1990.

On July 19, 1990, Westlake Codified Ordinance No. 1990–166 was given its first reading before council and was then referred to the Finance Committee.

In an election held in November 1990, the voters of Westlake defeated a proposed city income tax increase which had been supported by the city council. One of the proposed purposes of the defeated measure was to provide revenue for the acquisition, operation and maintenance of recreational facilities. See Westlake Council Resolution No. 1990–174.[1]

The Finance Committee gave its unanimous recommendation on the proposed ordinance on January 23, 1991. On February 7, 1991, the proposed ordinance, Westlake Codified Ordinance No. 1990–166 ("Ord. No. 1990–166"), was given its second reading and adopted as an emergency measure by council.

---

1. This resolution sought the increase of the city income tax from one percent to one and one-quarter percent for the purpose of "providing funds to pay costs of capital improvements, *including recreational facilities and related improvements,* constructing, furnishing and equipping a new City Hall, the conversion of the existing City Hall to a senior center and principal of and interest on all the bonds and notes of the City heretofore or hereafter issued without the vote of the electors for any of those purposes, the expenses incident to the payment of such bonds or notes, *and the costs of operating and maintaining those capital improvements.*" (Emphasis added.)

As seen from the language of Ord. No. 1990–166, at Section 3, the impact fee amounted to the payment of $1,000 per new single family unit, $700 per each dwelling unit in a new multifamily dwelling, $150 for every one thousand square feet of new commercial space, and $50 for every one thousand square feet of new industrial space.[2] All the income derived from these impact fees was to be paid into a "park and recreation trust fund." Ord. Nos. 1986–14 and 1990–166, Section 5. All sums collected through the impact fees may only be used for "public parks, playgrounds and recreational purposes." *Id.*, at Sections 5 and 6. The park and recreation trust fund consists of (1) all income derived from the impact fees generated by the ordinance, (2) such funds as Council shall appropriate from the general fund, and (3) bequests, legacies, donations and other recreation related charges. Ord. No. 1990–166, Section 5. No matching funds, in an amount equal to the impact charges collected, are mandated to be deposited from the general fund into the park and recreation trust fund.

Thereafter, BIA filed its initial complaint on August 14, 1991, seeking declaratory judgment and injunctive relief. Subsequent to the filing of two amended complaints by BIA, Westlake filed an answer and counterclaim on June 24, 1992. Following extensive discovery and motion practice, the parties submitted, in 1993, cross-motions for summary judgment. By status form entry, the trial court entered judgment on April 7, 1994, in favor of BIA, declaring Ord. No. 1990–166 "to be unconstitutional under both the U.S. and Ohio Constitutions" and dismissing with prejudice Westlake's counterclaim.[3] This timely appeal by Westlake followed presenting six assignments of error.

## I

"The trial court erred in granting BIA's motion for summary judgment and in denying defendant-appellant's motion for summary judgment."

## II

"The trial court erred by failing to recognize the presumption of constitutionality afforded to municipal ordinances and by failing to impose sufficient burden upon the BIA to overcome said presumption beyond a reasonable doubt."

---

**2.** By way of contrast, former Westlake Codified Ordinance No. 1986–14, at Section 3, provided the following impact fees: (1) $350 for each new dwelling unit, and (2) $350 for every two thousand square feet of new commercial space in excess of one thousand square feet.

**3.** Westlake's third-party complaint, filed on March 20, 1992, was voluntarily dismissed without prejudice on June 24, 1992.

## III

"The trial court erred by declaring Westlake Codified Ordinance No. 1990–166, which enacted a park impact fee for residential development, unconstitutional, thereby depriving Westlake of authority vested under the home-rule provisions of Article XVIII, Sections 3 and 7 of the Ohio Constitution."

## IV

"The trial court erred by failing to specify any defect in Westlake Codified Ordinance No. 1990–166, which is a constitutional exercise of municipal authority."

## V.

"The trial court erred by striking down Westlake's park impact fee, which was a valid enactment under Westlake's police power that is supported by an essential nexus between the need for additional parkland created by new development and the benefit derived by the residents of such new development."

## VI

"The trial court erred by striking down Westlake's park impact fee, which is supported by an individualized determination that the required impact fee for any development is related both in nature and extent to the proposed development's impact and thus does not operate as a regulatory taking without compensation, and does not violate the principles of equal protection or due process of law."

Essentially, these assignments of error argue the constitutionality of the impact fees imposed by Ord. No. 1990–166 and will therefore be considered together with regard to the determination of summary judgment.

Historically, general taxation (property and income) has been employed and imposed upon a city's residents to raise revenues to pay for the cost associated with providing general city services to the residents pursuant to the police powers of local self-government. See Section 3, Article XVIII of the Ohio Constitution; *State ex rel. Zielonka v. Carrel* (1919), 99 Ohio St. 220, 124 N.E. 134. As the years have gone by and the ability and willingness of the municipality to assess increased broad-based taxation levels have been restricted and/or restrained, municipalities have devised novel, politically palatable methods for raising revenue to support the ever burgeoning need, real or supposed, for infrastructure and services occasioned by added economic and population growth. See, generally, Blaesser & Kentopp, Impact Fees: The "Second Generation" (1990), 38 Wash.U.J. of Urb. & Contemp.Law 55. One of the methods devised by municipalities to help alleviate the funding crisis in overburdened services is

through the use of impact fees as an exaction placed upon developers and builders as a condition "to development approval." *Id.* at 63. The theory supporting the exaction is that it offsets "the impact of proposed developments on capital facilities." *Id.* It is unquestioned that the provision of recreation services and their facilities is a proper utilization of a municipality's police powers.

It must be determined whether the exaction in issue is in truth a "tax," the purpose of which is to raise revenues for recreation, or whether the exaction is a "fee." If the measure is construed as a tax on real property, Section 2, Article XII of the Ohio Constitution mandates that the tax be uniform according to value. Appellee argues that the measure is "a nonuniform tax on new construction only, not a tax uniformly applied to all property owners in the City." Appellee contends that as a nonuniform tax, it is violative of not only the Ohio Constitution, but the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. If the measure is construed as a fee, the charge must not exceed the cost and expense to the government of providing the service in question. *Granzow v. Montgomery Cty. Bur. of Support* (1990), 54 Ohio St.3d 35, 38, 560 N.E.2d 1307, 1310, citing *State ex rel. Gordon v. Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E.2d 206, paragraph two of the syllabus, and *Cincinnati v. Roettinger* (1922), 105 Ohio St. 145, 137 N.E. 6. Appellee argues that as a fee the measure has no nexus between the charge and the cost of providing the service, thus rendering the measure in effect a tax which is applied in a nonuniform manner on certain members of the public.

Appellant argues that the exaction on new construction is analogous to the sewage system tap-in fee imposed on new users in *Amherst Builders v. Amherst* (1980), 61 Ohio St.2d 345, 15 O.O.3d 432, 402 N.E.2d 1181, in that the fee bears a reasonable relationship to the entire cost of providing service to those new users.

In reviewing Ord. No. 1990–166, we conclude that the measure is not a fee but is in operation a tax. This conclusion is supported by the language of the ordinance, which provides at Section 5 that:

"Disbursements from the park and recreation fund shall be limited to those authorized by Council to provide for the construction, operation and maintenance of park facilities, *equipment and a park and recreation program for the City.*" (Emphasis added.)

Section 5 proves troublesome for several reasons. The section authorizes council to use the impact revenues collected solely on the operation and maintenance of existing recreational facilities which are also used, and presumably presently supported by property and income taxes, by the present residents of the city. Absent a matching amount on present residents, it is not fair or reasonable to shift the funding of the present recreation system from the general

public to the developers and purchasers of new construction. Further, it is impossible to ascertain whether the relationship is substantial between the charge and the burden to the recreation system of existing parks caused by new development. See *Amherst, supra*. The city speculates that there is a nexus between the charges and the burden in that the purchasers of new construction will actually burden the existing parks through additional use; thus, it is argued that it is fair to require these new users to assume a fair share for the additional costs to the city park system. However, there is no guarantee that these new construction purchasers will in fact use the existing park system, let alone cause a need for building new facilities, unlike the certainty of new users using and burdening a local sewage system as was the case in *Amherst*. Furthermore, we fail to see the nexus between development and the use of the charges for a "park and recreation program for the City." See Ord. No. 1990–166 at Section 5. As appellee argues in its brief, an undefined program such as this "could very well include expenditures totally unrelated to expanded park facilities made necessary by new home construction." While it is laudable to seek such a recreational program for the city and its residents, costs associated with that program should be borne by all residents, not merely those purchasing new construction, for the benefits of such a program run to all residents. By requiring only new construction purchasers to shoulder the burden of such an open-ended program, the charges imposed cannot be said to equal the cost of the service as a result of the development. Rather, that charge is necessarily inflated so as to pay for that share of the program which should be borne by the present residents and existing construction.

In *Towne Properties v. Fairfield* (1977), 50 Ohio St.2d 356, 4 O.O.3d 488, 364 N.E.2d 289, the court reviewed a city ordinance which established "a *tax* to provide funds for the acquisition, development, maintenance and operation of publicly owned recreation sites and facilities." (Emphasis added.) The Fairfield ordinance was enacted "to relieve the strain upon the city's existing facilities caused by its exploding population." *Id.* at 356, 4 O.O.3d at 488, 364 N.E.2d at 289. The Fairfield ordinance "required anyone obtaining a building permit or registering trailer or mobile home pads or installing manufactured residential units not requiring a building permit to pay $50 per unit. This revenue, *plus a matching amount*, would be placed in the special recreational fund created by the ordinance." (Emphasis added.)

The court in *Towne* determined that (1) the city was not prevented from imposing the recreation tax to cover its recreational expenses, and (2) the tax did not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution:

"In the exercise of their taxing powers, the municipalities and the state are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. However, this clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of taxation. *Allied Stores of Ohio v. Bowers* (1959), 358 U.S. 522 [79 S.Ct. 437, 3 L.Ed.2d 480].

"The appellant experienced an explosive growth of population over a relatively short period of time, placing a strain upon its recreational facilities. The ordinance enacting this tax was based upon a determination by city council that (1) a portion of the burden should be borne by the developers and purchasers who were incidentally but not totally responsible, and (2) *the remaining share of the cost should be borne by the present residents, who would also be using the facilities.* The statutory scheme of the ordinance carried this determination into effect, by requiring an *appropriation equal to the revenue derived from the subject tax to be made annually from the general fund to the recreational capital improvement fund.*

"In our opinion, there is no merit to the contention that this tax ordinance violates the Equal Protection Clause of the Fourteenth Amendment. As was stated in paragraph six of the syllabus in *National Tube Co. v. Peck* (1953), 159 Ohio St. 98, at page 100 [50 O.O. 74, at 74–75, 111 N.E.2d 11, at 12–13]:

" 'The equal-protection provisions of the Constitutions do not require the state to maintain a rigid rule of taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discrimination not shown to be arbitrary or capricious do not fall within constitutional prohibitions.' " (Emphasis added.) *Towne, supra,* 50 Ohio St.2d at 359–360, 4 O.O.3d at 490–91, 364 N.E.2d at 291–292.

In *State ex rel. Waterbury Dev. Co. v. Witten* (1978), 54 Ohio St.2d 412, 8 O.O.3d 410, 377 N.E.2d 505, the Supreme Court examined two ordinances enacted by the village of Waterville which mandated certain charges to be collected prior to the issuance of a building permit. The first ordinance raised water tap-in fees from $175 to $720, with approximately $220 of that sum covering the actual cost of the water connection and water meter installation, and the remaining $500 representing an "equity value." *Id.* at 412, 8 O.O.3d at 410, 377 N.E.2d at 505. The second ordinance specified a *park fee* of $30 for a single family dwelling, this fee to be deposited into a Village New Park Development Fund. "No village revenues other than the funds generated from the park fees * * * are paid into the New Park Development Fund." *Id.* at 413, 8 O.O.3d at 411, 377 N.E.2d at 506. The Supreme Court determined in *Waterbury* both that the "equity value" fee was invalid, because it exceeded the benefit to the individual property owner,

and that the park fee was invalid because *Towne* mandated that for such a charge to be valid under the Equal Protection Clause, the charge must be imposed upon developers and purchasers *and* present residents.

Unlike the ordinance in *Towne,* Ord. No. 1990–166 imposes no requirement for annual mandatory matching funds, in the amount collected by the recreation fee, from the general fund. Thus, the cost associated with the affected recreational facilities of Westlake is borne solely by the developers and purchasers of new construction without a share of the cost being borne by the present residents or purchasers of existing housing and commercial/industrial stock who would also be using the recreational facilities. Accordingly, Ord. No. 1990–166 is in violation of the Equal Protection Clause of the Fourteenth Amendment and the Ohio Constitution.

■ Finally, appellant argues that the constitutionality of the ordinance can be preserved by simply striking the words "operation and maintenance" from Section 5 of the ordinance, so as to prevent the collected impact charges from being spent on existing recreational facilities and to give effect to the intention of the council in enacting the ordinance. This argument is mistaken. Merely striking the words "operation and maintenance" from Section 5 does not prevent the city from disbursing impact funds to existing recreation facilities. Section 1 of the ordinance also permits the city to use the impact charges on the "improvement" and "operation" of parks, playgrounds and recreation facilities. Likewise, Section 6 of the ordinance, provides the following expansive language:

"All the sums collected pursuant to this Ordinance shall be used as allocated by the Council * * * solely for public parks, playgrounds and recreational purposes, such as, *but not limited to* the following[.]" (Emphasis added.)

Both Sections 1 and 6, explicitly and by implication, allow the city the flexibility to use the collected funds on existing parks and recreation facilities. Excising the offending three-word phrase from Section 5 will not alter the general scope of the ordinance due to the applicability of remaining Sections 1 and 6. See *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 28 OBR 250, 503 N.E.2d 136.

In summary, we conclude that summary judgment was properly granted in favor of BIA on the basis that the ordinance is in violation of the Equal Protection Clause and the Ohio Constitution.

*Judgment affirmed.*

BLACKMON and PORTER, JJ., concur.

APPENDIX

CITY OF WESTLAKE, OHIO ORDINANCE NO. 1990–166

AN ORDINANCE AMENDING ORDINANCE NO. 1986–14 ENTITLED "AN ORDINANCE PROVIDING FOR THE PAYMENT OF FEES TO PROVIDE FUNDS FOR PARK AND RECREATION PURPOSES AND CREATING A PARK AND RECREATION TRUST FUND, AND DECLARING AN EMERGENCY," AND DECLARING AN EMERGENCY.

WHEREAS, this Council adopted Ordinance No. 1986–14 on March 20, 1986 providing for the payment of fees to provide funds for park and recreation purposes; and

WHEREAS, the Council of the City of Westlake, Ohio, finds that the continued increase in the development of dwelling units, business developments, office developments and industrial developments within the City of Westlake with the attendant increase in population of the City, thereby diminishing the available supply of open space in the City, has created an immediate need for the planning, acquisition, improvement and expansion of public parks, playgrounds and recreation facilities, and the means of providing additional revenues with which to finance such public facilities; and

WHEREAS, this Council, through an extensive analysis conducted on the Park Impact Fees by the Planning Department, desires to amend Ordinance No. 1986–14 to incorporate the necessary changes and/or increase the fees to allow for adequate public parks, playgrounds and recreation facilities within the City of Westlake.

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF WESTLAKE, COUNTY OF CUYAHOGA AND STATE OF OHIO:

*SECTION 1:* That Ordinance No. 1986–14 entitled "An Ordinance Providing for The Payment of Fees to Provide Funds for Park and Recreation Purposes and Creating a Park and Recreation Trust Fund, and Declaring an Emergency" be and the same is hereby amended and as amended shall read as follows:

*SECTION 1:* That this Council of the City of Westlake, Ohio hereby declares that the fees required to be paid hereby assessed for the planning, acquisition, improvement, expansion and operation of public parks, playgrounds and recreation facilities to serve the increasing population of the City and the means of providing additional revenues with which to finance such public facilities.

*SECTION 2:*

(A) As used herein the term "person" includes every person, firm, partnership or corporation engaging in construction activities itself or through the services of any employee, agent or independent contractor.

(B) As used herein the term "dwelling unit" shall be the same as defined in Section 1203.08(A) of the Codified Ordinances of the City of Westlake.

(C) As used herein the term "one-family dwelling" shall be the same as defined in Section 1203.08(c) and defined as a two-family dwelling in Section 1203.08(d) of the Codified Ordinances of the City of Westlake.

(D) As used herein the term "multi-family dwelling" shall be the same as defined in Section 1203.08(e) of the Codified Ordinances of the City of Westlake.

(E) As used herein the term "commercial space" means each space, area, or building which is either intended for any of the uses set forth in Chapters 1215, 1216, 1217, 1218 and/or 1219 of the Zoning Code except for Main uses as set forth in the Exclusive Industrial District of Chapter 1218 of the Zoning Code of the City of Westlake. It shall not include any space, area or building which is used for school purposes or public buildings used or operated by the Federal Government, the State Government, the County Government, the City of Westlake, the Westlake School Board, or Porter Library.

(F) As used herein the term "industrial space" means each space, area, or building which is either intended or used for any of the permitted Main uses set forth in the Exclusive Industrial District in Chapter 1218 of the Zoning Code of the City of Westlake. It shall not include any space, area or building which is used for school purposes or public buildings used or operated by the Federal Government, the State Government, the County Government, the City of Westlake, the Westlake School Board, or Porter Library.

*SECTION 3:* In addition to any other fee or fees prescribed in the Codified Ordinances of the City of Westlake, every person constructing any new dwelling unit or new commercial space or an addition to any existing commercial space in excess of 1,000 square feet in the City of Westlake shall pay to the City, fees for park and recreation purposes as follows:

(A) $1,000.00 for each dwelling unit in a one-family dwelling;

(B) $700.00 for each dwelling unit in a multi-family dwelling or building;

(C) $150.00 for every 1,000 square feet, or portion thereof on a prorated basis, of commercial space or for an addition to existing commercial space in excess of 1,000 square feet at the same rate for new commercial space;

(D) $50.00 for every 1,000 square feet, or portion thereof on a prorated basis, of industrial space or for an addition to existing industrial space in excess of 1,000 square feet at the same rate for new industrial space.

*SECTION 4:* Such fees shall be due and payable upon the issuance of a building permit by the City of Westlake for the construction of any such dwelling unit or commercial space or addition thereto as set forth above; provided, however, that there shall be a refund of such fees in the event the building permit is not used for such construction.

SECTION 5: There is hereby created a park and recreation trust fund. There shall be paid into the park and recreation trust fund such funds as Council shall appropriate from the General Fund and all income derived from the fees required by this Ordinance as well as any other income derived from bequests, legacies pertaining to recreational purposes and income derived from earnings, fees, donations, revenues and other charges for park and recreation facilities.

Disbursements from the park and recreation fund shall be limited to those authorized by Council to provide for the construction, operation and maintenance of park facilities, equipment and a park and recreation program for the City.

SECTION 6: All of the sums collected pursuant to this Ordinance shall be used as allocated by the Council of the City of Westlake solely for public parks, playgrounds and recreational purposes, such as, but not limited to the following:

(A) Purchase of land and interest in land;

(B) Development of parks and buildings for use thereon;

(C) Acquisition and development of other varieties of open space;

(D) Acquisition and development of parkways and median islands;

(E) Acquisition and development of bicycle trails, riding trails, and other types of trails for recreational use; and

(F) Acquisition and development of recreation facilities and equipment."

SECTION 2: That Ordinance No. 1986–14 or any other ordinance or part of ordinances in conflict herewith are hereby repealed.

SECTION 3: That it is found and determined that all formal actions of this Council concerning and relating to the adoption of this ordinance were adopted in an open meeting of this Council and that all deliberations of this Council and of any of its committees that resulted in such formal actions were in meetings open to the public in compliance with all legal requirements including Section 121.22 of the Ohio Revised Code.

SECTION 4: That this ordinance is hereby declared to be an emergency measure immediately necessary for the preservation of the public health, safety and welfare, and for the further reason that it is immediately necessary to provide for the parks and recreation facilities for the citizens of the City of Westlake, and further provided it receives the affirmative vote of two-thirds of all members elected to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor.