U.S.A. MANAGEMENT AND DEVELOPMENT,
INC., Appellant and Cross–Appellee,

v.

LAKE COUNTY DEPARTMENT OF UTILITY,
Appellee and Cross–Appellant, et al.

[Cite as *U.S.A. Mgt. & Dev., Inc. v. Lake Cty. Dept.
of Util.* (1999), 134 Ohio App.3d 432.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 98–L–019.

Decided July 19, 1999.

*Mark A. Ziccarelli,* for appellant and cross–appellee.

*Charles E. Coulson,* Lake County Prosecuting Attorney, and *Michael P. Brown,* Assistant Prosecuting Attorney, for appellee and cross–appellant.

---

CHRISTLEY, Judge.

This appeal emanates from a final judgment of the Lake County Court of Common Pleas. Appellant and cross-appellee, U.S.A. Management and Development, Inc., appeals from the trial court's judgment ordering the company to make an application to appellee and cross-appellant, the Lake County Department of Utilities,[1] for water service on two parcels of property and to pay the resulting tap-in fees.

---

1. In the trial court, the case caption referred to this entity as the Lake County Department of Utility. It is apparent from a review of the record, however, that the actual name of the

U.S.A. Management and Development ("U.S.A.") is a corporate entity that manages two commercial properties located in close proximity to each other in Willoughby, Ohio. Each lot houses two commercial buildings. Although the tracts are owned by separate partnership groups, U.S.A. oversees their day-to-day fiscal operation.

U.S.A. tapped into the Lake County water system following the erection of the first building on each lot. Prior to doing so, it obtained the required permits from the Lake County Department of Utilities ("Department of Utilities") and paid the mandatory tap-in fees.

Subsequently, U.S.A. built a second commercial structure on each parcel. The company, however, did not contact the Department of Utilities before their construction. U.S.A. accessed water for these buildings by extending the underground service lines from the first buildings to the newly built structures. The company simply tapped into the pre-existing service lines that were already supplying water to the properties via the main Lake County distribution system.

U.S.A. pays for the increased water usage because it is recorded by a single meter on each property. The company, however, never paid a tap-in fee for either of the two new buildings.

By late 1996, the Department of Utilities realized that the additional structures had been tied into the Lake County water supply without prior authorization, inspection, or payment of fees. The agency contacted officials from U.S.A. Various telephone conversations and exchanges of correspondence then ensued. No agreement, however, could be reached. U.S.A. took the position that it should not have to pay tap-in fees for the two new buildings after it had previously paid such fees when the original structures were erected on the properties. From the company's perspective, it had not established any new connections to the Lake County water system, but rather simply tapped into pre-existing service lines. U.S.A. further questioned the legal authority of Lake County to assess the second tap-in fees.

By contrast, the Department of Utilities maintained that U.S.A. had to complete the mandatory application process for the two new buildings. Upon doing so, the agency would calculate the required tap-in fees. Further, the Department of Utilities insisted that it had the right to inspect the water lines laid from the original buildings to the new structures. If U.S.A. had timely submitted the necessary applications for water service, then that inspection would have taken place during the original construction process. U.S.A., however, laid

---

agency is the Lake County Department of Utilities. We will, therefore, refer to this party by its correct designation in this opinion.

the new water lines without notifying the Department of Utilities. As a result, any subsequent inspection would necessarily be invasive.

The dispute came to a head in June 1997, when the Department of Utilities notified U.S.A. that water service to both properties would be cut off if the company did not take steps to comply with county regulations. On July 9, 1997, U.S.A. responded by filing an action for declaratory judgment and injunctive relief. The complaint requested that the trial court determine the rights of the parties, specifically whether U.S.A. was obligated to pay any additional tap-in fees to the Department of Utilities. On July 28, 1997, the Department of Utilities filed an answer and counterclaim against the company. In the counterclaim, the agency requested that it be allowed to inspect the water lines and demanded that U.S.A. pay the inspection and tap-in fees associated with each property.

The matter was heard in an evidentiary hearing on August 1, 1997. Charles Andrews, a U.S.A. corporate officer and shareholder, testified on behalf of the company. The Department of Utilities called two witnesses during the presentation of its case: Chris Hodges, an engineering technician employed by Lake County, and Albert J. Saari, the Lake County Sanitary Engineer. Both parties introduced various exhibits into evidence. Following the hearing, the trial court allowed the parties to file written briefs setting forth their positions on the legal issues presented by the case.

On December 18, 1997, the trial court rendered its decision. In its judgment entry, the trial court determined that Lake County has the authority to charge a separate tap-in fee for each commercial building that draws water from the county distribution system and that, in fact, Lake County has consistently required every building that connects to the system indirectly through another building to pay a separate fee. As a result of this holding, the trial court ordered U.S.A. to (1) apply for water service for both buildings, (2) allow the Department of Utilities access to the subject premises for the purpose of inspection and implementation of remedial measures if necessary, (3) pay a $70 inspection fee for each parcel, (4) pay tap-in fees of $5,520 and $5,440, respectively, for the two new buildings, and (5) provide documentation relating to ownership of each property.

From this judgment, U.S.A. filed a timely notice of appeal with this court, while the Department of Utilities instituted a timely cross-appeal pursuant to App.R. 4(B)(1). In its appeal, U.S.A. now asserts the following assignments of error:

"[1.] The trial court erred by ordering an additional tap-in fee for connection of a waterline between an existing building on the same premises with the same owner where a tap-in fee had already been paid for the existing building.

"[2.] The trial court erred in ordering U.S.A. to pay an unreasonably high tap-in fee."

The Department of Utilities sets forth the following assignment of error in its cross-appeal:

"The trial court erred when it ordered Lake County to pay the costs of invasive inspections of the USA connection."

■ In its first assignment of error, U.S.A. proposes that the trial court erred by holding that Lake County has the authority to assess a tap-in fee for the second building on each property. The company's position is based on the fact that these connections to the county water system were not direct taps into the main line, but rather were only indirect connections through pre-existing service lines.

U.S.A. specifically argues that neither the Revised Code nor the local water regulations adopted by Lake County authorize the imposition of a second tap-in fee for accessing a service line as opposed to the main system. With regard to the Revised Code, U.S.A. points to the following language in R.C. 6103.02(A):

"When the distributing pipes are owned by the county[,] the board shall fix a reasonable tap-in charge and no person shall be permitted to tap into such distributing pipes until such charge has been paid in full."

R.C. Chapter 6103 governs county water supply systems in general, while R.C. 6103.02 specifically describes the powers of a board of county commissioners in relation to such water systems. U.S.A. argues that the term "distributing pipes" as used in R.C. 6103.02(A) refers to the main water lines that run throughout a given county. According to the company, therefore, a water service customer cannot be charged for tapping into a previously installed service line because R.C. 6103.02(A) only authorizes such an assessment for establishing a direct connection to a main line.

■ Upon review, we do not agree with U.S.A.'s interpretation of R.C. 6103.02(A). As with any statute, the intent of the General Assembly must be discerned based upon the entirety of the section. Even if we accept U.S.A.'s position that the term "distributing pipes" refers only to those main water lines owned by the county, we do not read the statute as limiting tap-in charges exclusively to direct connections into such lines.

■ There is nothing in the language of R.C. 6103.02(A) that prohibits a board of county commissioners from charging a tap-in fee when the connection to the distributing pipes is made via a previously installed service line on private property. In such a situation, the landowner is still tapping into the public water supply, albeit indirectly, and we do not read R.C. 6103.02(A) as restricting the ability of the board to levy a tap-in fee for such an indirect link into the county

system. Thus, our interpretation of R.C. 6103.02(A) is consistent with that of the Department of Utilities.

■ R.C. 6103.02(A) also authorizes the board to promulgate rules for the governance of a county water supply:

"The board may adopt, publish, administer, and enforce rules for the construction, maintenance, protection, and use of public water supplies in the county outside of municipal corporations, and of public water supplies within municipal corporations in its county wherever such water supplies are constructed or operated by such board or are supplied with water from water supplies constructed or operated by such board, including the establishment of connections. Such rules shall not be inconsistent with the laws of the state or the rules of the environmental protection agency."

In the case *sub judice*, the Lake County Board of Commissioners has established "Rules and Regulations Governing Water Supply in Lake County" pursuant to the statute. The most recent edition of the rules was adopted by board resolution on June 19, 1990, and became effective on July 2, 1990. The Department of Utilities introduced a complete copy of the rules as an evidentiary exhibit during the course of the August 1, 1997 hearing in the trial court.

U.S.A. contends that the rules do not grant the Department of Utilities the power to impose additional tap-in charges for a second building constructed on property that already houses a structure for which a tap-in fee was previously paid. In fact, U.S.A. goes so far as to claim that the rules are devoid of any explanation as to when a tap-in fee can be levied against a property owner.

U.S.A. is incorrect. The rules not only authorize the assessment of tap-in fees, but they also provide an explanation of how and when such fees are to be calculated. Rule 911.014 reads in part:

"Benefit Unit shall be the basis for establishing tap-in charges to the waterworks system. The number of benefit units assigned to the premises for which a connection is required shall be determined as follows:

"1. Each single family residential unit shall be assigned one benefit unit.

"2. A multi-family residential unit or non-residential building, structure or other facility shall be assigned such number of benefit units or portions thereof, based on the average anticipated water use per current EPA guidelines, to the nearest one tenth by dividing the average anticipated water consumed on the premises by 300."

Rule 911.014 explains the method of calculating the tap-in fee based on the number of benefit units that are assigned to a given premises. In the case at

bar, the word "premises" as used in Rule 911.014 is the key to determining whether U.S.A. owes additional tap-in charges for the two new buildings.

Pursuant to Rule 911.025, the word "premises" is defined in different ways, depending on the circumstances:

"Premises means the physical property to be served. Each of the following together with the lot or parcel of land upon which it is located, or such portion of such land as is used or held for use with it, shall constitute a premises:

" * * *

"e. One building, designed for single occupancy by a person in the conduct of one business enterprise.

"f. Adjacent buildings of the same ownership, and designed for single occupancy by a person in the conduct of one business enterprise."

Notably, U.S.A.'s brief does not contain any reference to either Rule 911.014 or Rule 911.025. Based on its argument before this court, however, it would be safe to assume that U.S.A. takes the position that a "premises" means only the tract of land, regardless of how many buildings are located on the land or for what purpose they are used.

The rules, though, belie any such contention. Under Rule 911.025, "a premises" is determined by not only the number of buildings situated on the property, but also by whether they are used for residential or business purposes. Rule 911.014 then sets forth the method for calculating the number of benefit units to be assigned to respective premises, which, in turn, forms the basis for determining the premises' tap-in fee.

In the instant matter, it is uncontroverted that the two new buildings are each being employed in a different commercial enterprise than the first buildings that already existed on the respective lots. U.S.A. did not refute this point in the trial court. Therefore, the second commercial buildings are separate "premises" as defined by Rule 911.025 and, therefore, are subject to tap-in fees pursuant to Rule 911.014. U.S.A.'s first assignment is without merit.

In its second assignment of error, U.S.A. contends that the trial court erred by upholding unreasonably high tap-in fees. The gist of this proposed error is that even if additional tap-in fees were authorized, such fees must nevertheless bear a reasonable relationship to the per-unit cost of providing water service. U.S.A. argues that the trial court should not have ordered it to pay the tap-in fees of $5,520 and $5,440, respectively, because such fees bore no reasonable relationship to the costs incurred by Lake County in allowing the company to tap into the public water supply.

██ To support its position, U.S.A. initially points out that the Lake County water regulations previously allowed a property owner to request that a tap-in charge be based upon actual metered water use, instead of average anticipated water consumption. Specifically, if the metered water flow demonstrated that it would be appropriate to change the number of benefit units assigned to the property, then an adjustment would be made to the tap-in charge.

It is true that the public water supply regulations in Lake County did at one time provide for this alternative method of calculating tap-in fees. However, there was undisputed evidence introduced during the evidentiary hearing that the Lake County Board of Commissioners amended the regulations effective July 2, 1990. The amended version of the rules does not allow for tap-in fees to be calculated based on actual water meter readings.

In its brief, U.S.A. attempts to argue that since the rules as adopted in 1990 do not expressly exclude the option of using actual metered water use as the calculation basis, the company should be allowed to demand that its tap-in fee be determined pursuant to this method.[2] We disagree.

Any objective reading of the pre–1990 regulations and the rules that took effect on July 2, 1990 clearly demonstrates that the Lake County Board of Commissioners repealed this as an option for assessing tap-in charges. Thus, U.S.A.'s reliance on language that has since been deleted from a regulation is inapposite.

██ As a general matter, we do agree that the connection fees levied by Lake County must be reasonable. R.C. 6103.02(A) does state that a board of county commissioners "shall fix *reasonable rates* to be charged for water supplied when the source of supply or distributing pipes are owned or operated by the county[.]" (Emphasis added.)

In the case at bar, the underlying purpose of the tap-in fees is for Lake County to recoup money to service the debt that the county has incurred in financing capital improvement projects related to the water system. Based on testimony at the August 1, 1997 hearing, such projects have included the construction and maintenance of a water treatment plant, water towers, and large trunk mains.

██ It is well settled that the government may impose a tap-in charge upon anyone desiring to connect to a public utility system for the purpose of financing the costs associated with the construction of the system. See, *e.g., Amherst Builders Assn. v. Amherst* (1980), 61 Ohio St.2d 345, 15 O.O.3d 432, 402 N.E.2d

---

2. U.S.A. does not expressly argue a corollary principle, to wit: that the company should be entitled to a refund if it initially pays the tap-in fee as calculated by average anticipated water flow, but this amount is ultimately proven to exceed the charge that the company would have incurred based on actual water use as measured by the meter.

1181, syllabus (a municipality may impose a tap-in or connection fee upon new users of a sewage system that bears a reasonable relationship to the cost of constructing the system); *Kelley v. Hoffman* (Feb. 17, 1982), Putnam App. No. 12–81–9, unreported, 1982 WL 6732 (county could implement a sewer tap-in fee to recoup the costs of constructing the sewage system). Thus, Lake County is clearly within its discretion in charging tap-in fees as a way of ensuring that the costs of building and maintaining the public water system are borne by all users who eventually connect to the system.

█ Lake County computes tap-in fees under Rule 911.014 by using, in part, the average anticipated water use for a given structure as established by current Environmental Protection Agency (EPA) guidelines. The use of such regulatory guidelines is a reasonable basis for Lake County to employ in calculating tap-in fees. See, *e.g., Amherst Builders,* 61 Ohio St.2d at 349, 15 O.O.3d at 434, 402 N.E.2d at 1184 (implicitly holding that the use of EPA guidelines for estimating sewage flow was a reasonable method of devising a fee schedule). By using current EPA guidelines, Lake County is attempting to establish a standardized procedure for estimating the number of gallons of water that a particular type of structure will need to draw from the system.

Upon review, we conclude that the trial court correctly ordered U.S.A. to pay the tap-in fees as calculated by the Department of Utilities. The fees were not exorbitant because Lake County employs a reasonable procedure to calculate connection charges based on standardized water flow guidelines. U.S.A.'s second assignment is not well taken.

█ We turn now to the cross-appeal instituted by the Department of Utilities. In its sole assignment of error, the agency maintains that the trial court erred by ordering Lake County to pay the costs of an invasive inspection of U.S.A.'s water lines if no violations are discovered. This refers to the following ruling made by the trial court in its December 18, 1997 judgment entry:

"Defendant [the Department of Utilities] is entitled to exercise its reasonable procedures to inspect the water lines, the backflow preventers and interior plumbing connections. If Defendant's inspection of the premises is invasive of the property, Defendant shall pay all costs thereof, unless real violations are discovered. In the event that real violations are discovered, then the burden of the costs for the inspection shall shift to Plaintiff [U.S.A.]."

As described previously, U.S.A. installed underground pipes that ran from the original buildings to the two new structures. The company did this without applying for water service in violation of the rules adopted by Lake County.

Moreover, by the time the Department of Utilities became aware that U.S.A. had established two new connections to the water system, ·the construction was

already completed. This premature construction prevented the Department of Utilities from inspecting the lines as they were being laid.

There is no doubt that Lake County has the right to inspect the pipes, fittings, and other components that U.S.A. used to tap into the public water system. Under Rule 911.414, "[w]ater service will not be provided to premises unless opened customer's water line and sewer connection trenches are inspected and approved by the Lake County Sanitary Engineer." In order for Lake County to exercise its right of inspection now, the buried water lines will have to be unearthed.

R.C. 6103.02(A) provides that "[t]he sanitary engineer may enter upon any public or private property for the purpose of making surveys and examinations necessary for the design or examination of public water supplies, and may make such surveys and examinations." It also stipulates that "[i]f actual damage is done to property by the making of such surveys and examinations, the board shall pay the reasonable value of such damage to the owner of the property damaged[.]"

U.S.A. urges this court to rely on this language from R.C. 6103.02(A) to affirm the trial court's ruling. After reviewing the statute, however, we do not believe that it is applicable to the present situation.

The relevant language of R.C. 6103.02(A) states that the sanitary engineer may enter upon any land for the purpose of making surveys necessary for the design or examination of *public water supplies* and that the county must pay the reasonable value of actual damage done to property by the making of such surveys. The term "public water supply" is defined in R.C. 6103.01.[3]

It seems that Lake County would not be entering onto U.S.A.'s properties for the purpose of surveying the design of a "public water supply" as that term is defined in R.C. 6103.01.[4] Rather, employees from the Department of Utilities would enter onto the land merely to inspect the pipes, fittings, and other components that the company used when tapping into the public water supply flowing through Lake County's distribution system.

---

3. This statute provides:
   "As used in sections 6103.02 to 6103.30, inclusive, of the Revised Code, 'public water supply' means wells, springs, streams, or other sources of water supply, pumping equipment, treatment or purification plants, distributing mains, cisterns, reservoirs, necessary equipment for fire protection, other equipment, and lands, rights of way, and easements, necessary for the proper development and distribution of the supply."

4. The term "public water supply" is defined in an identical fashion by Rule 911.026 of the regulations adopted by Lake County.

This appears to be a distinction with a difference. Under our reading of R.C. 6103.01 and 6103.02, Lake County would not be entering upon U.S.A.'s properties for the purpose of making surveys and examinations necessary for either the design of man-made public water supplies or the examination of naturally occurring public water supplies. Instead, Lake County would simply be inspecting U.S.A.'s water lines as mandated by Rule 911.414. Thus, the language in R.C. 6103.02(A) requiring that the county pay the reasonable value of actual damage done to the property "by the making of such surveys and examinations" is not applicable to this situation.

It is unclear whether the trial court relied on this language in rendering its decision regarding the inspection of U.S.A.'s properties. The judgment entry made no reference to this portion of the statute. Moreover, there is nothing in R.C. 6103.02(A) to support the distinction drawn by the trial court—that the cost of damage to the properties is to be borne by Lake County if no violations are discovered, but that the burden shifts to U.S.A. if the company did not properly install its water lines.

While we can appreciate the trial court's attempt at achieving equity, we see no legal authority for the decision to impose liability on Lake County for any damages arising from the inspections if no violations are discovered. The rules promulgated by Lake County expressly required that U.S.A. apply for water service and that it allow inspection of the water lines while they were still open. The inspections will necessarily be invasive at this point, but U.S.A. is solely responsible for their intrusive nature. Given U.S.A.'s clear lack of compliance with the rules, the company must bear the burden of any property damage caused by reasonable inspections, regardless of whether any violations are discovered. The cross-appeal has merit.

Based on the foregoing analysis, U.S.A.'s assignments of error are without merit. In the cross-appeal, the assignment of error put forth by the Department of Utilities is well taken. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and the matter is hereby remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.