OPINION
{¶ 1} Plaintiff-appellant, The Drees Company, appeals a Warren County Court of Common Pleas decision granting summary judgment to defendant-appellee, City of Mason, in a water and sewer system fee dispute. We affirm the trial court.
 {¶ 2} In December 1998, Drees applied for two permits from Mason to tap water and sewer services for its Twin Fountains project. One permit was for Phase I of a residential apartment unit development and the other was for an adjoining clubhouse. Phase I consisted of 23 buildings containing 184 residential family units.
 {¶ 3} Drees applied for a third permit to tap water and sewer services on June 2, 2000 for Phase II of the project. Phase II consisted of an additional 17 buildings containing 136 residential family units. The completed complex, Phases I and II, would have 40 buildings containing 320 residential family units.
 {¶ 4} Instead of purchasing 40 meters for sewer and water, one meter for every building, Drees asked Mason if it could use one larger meter to service all 40 buildings. Drees could then run a larger-sized pipe from the meter for each of the building units to connect. Mason agreed to the arrangement. Mason originally charged Drees for four tap-ins, one for water and one for sewer, for both Phases I and II.
 {¶ 5} Drees later brought suit against Mason claiming that it overcharged for various fees pertaining to the permits. Mason agreed that it overcharged Drees for some fees. However, after conducting an audit, it found that it had not charged Drees for the tap-ins for each of the 320 family units into its water and sewer system, 640 tap-ins total. Mason filed a motion for summary judgment, arguing that Drees was required to pay a tap-in fee for both sewer and water as to each of the 320 units within Phases I and II. Drees filed a memorandum in opposition to Mason's motion for summary judgment and cross-motion for summary judgment, arguing among other things that it should not have to pay for the tap-ins. The trial court found in Mason's favor on its motion. Drees appeals raising a single assignment of error:
 {¶ 6} "The trial court erred to the prejudice of plaintiff by granting summary judgment to defendant on its claims of undercharges for water system fees and sewer system fees."
 {¶ 7} Drees maintains that the trial court erred in determining that it was required to pay fees to Mason for each family unit in its Phase I and II apartment building project for tapping into Mason's sewer and water systems. It argues that the fees should be calculated on a per tap-in basis and not a per-unit basis.
 {¶ 8} An appellate court's review of a summary judgment decision is de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. To be granted summary judgment pursuant to Civ.R. 56(C), the movant must demonstrate that: "(1) [there is] no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Civ.R. 56(C); WelcoIndustries, Inc. v. Applied Companies, 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 9} The non-moving party may not rest upon the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of genuine issues of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); Mitseffv. Wheeler (1988), 38 Ohio St.3d 112, 115. In deciding whether there is a genuine issue of material fact, the evidence must be construed in favor of the non-moving party. Angel v. The KrogerCompany, Warren App. No. CA2001-07-073, 2002-Ohio-1607.
 {¶ 10} Mason's Ordinance § 941.20(b) states that the water and sewer service system fees "shall be computed at the rate of: $600.00 per tap-in." Drees has paid $2,400 for its tap-ins, once each for sewer and water, for both Phases I and II. Drees connected each family unit to the water and sewer system through the pipes it laid from its original tap-ins. It argues that it need not pay for each family unit's tap-in into the main water and sewer lines as it has only tapped into Mason's main water and sewer lines once for each Phase.
 {¶ 11} Drees first maintains that charging it for each family unit's tap-in to the water and sewer system is "contrary to the plain language of the municipality's own ordinances." They maintain that the phrase "tap-in" is unambiguous and that the main water and sewer lines were only "tapped" once for each phase.
 {¶ 12} Mason's ordinance § 941.20(a) states that the purpose of the system fees for water and sewer are to assure "that the cost of construction of the City's water and sewer services is borne equitably by all users of such services." Reading the plain language of § 941.20 (a), it is apparent that in order for the costs to be "borne equitably," Drees has to pay a fee for each family unit's tap into the water and sewer system. See alsoU.S.A. Mgt. and Dev. v. Lake Cty. Dept. of Util. (July 19, 1999), 134 Ohio App.3d 432. Each of these units is using water and sewer services provided by Mason; therefore, it would be inequitable if each of Drees' family units did not have to pay the same fee imposed upon all others who use Mason's water and sewer system. Moreover, Drees was on notice that this fee would be imposed, as Mason's Assistant City Engineer, Kurt Seiler, stated in an affidavit that he gave Drees a copy of a Mason permit form: "TAP-IN FEES FOR WATER SEWER." Within this document it states "FOR MULTI-FAMILY APARTMENT COMPLEXES, THE TAP-IN FEE IS FOR EACH FAMILY UNIT." Drees' first argument is without merit.
 {¶ 13} Drees next argues that the terms "per-tap" and "per family unit" are used throughout Mason's code independently, and "therefore cannot have the same meaning." It argues that §§ 941.20 (b)(1) and (2) of Mason's code do not utilize the term "per family unit" and instead use the term "per-tap." Drees argues that other sections of the code specifically use the term "per family unit" when delineating the costs for other sewer and water fees. Therefore, Drees maintains that the meanings for each phrase are different.
 {¶ 14} We begin our analysis by first noting that Mason's ordinance § 101.07 concerns determinations of legislative intent. Section 101.07(a)(2) states in part that "[i]n enacting an ordinance, it is presumed that: [t]he entire ordinance is intended to be effective." If we read the entirety of § 941.20, we find that the purpose for imposing fees for the water and sewer system is given. Section 941.20(a) states specifically:
 {¶ 15} "In order to be assured that the cost of construction of the City's water and sewer services is borne equitably by all users of such services, the City hereby establishes system fees to be imposed on all property owners who receive the benefits of such services, but who have not been, or whose predecessor(s) in interest were not, assessed or charged an extension line charge or otherwise have not paid for the cost of construction for such services in proportion to the benefits received. As used in this section "owner" includes the owner's agent or representative who have control of access to the property."
 {¶ 16} A reading of the above section together with §§ 941.20(b)(1) and (2) sheds light upon the meaning of "per tap-in." In order for the cost of construction to be borne equitably, the tap-in fee is charged equitably to all users. Therefore, the meaning of the phrase "per tap-in" does have the same meaning as "per family unit" in this section of the code.
 {¶ 17} Each of the family units is a "user" contemplated within the meaning of this section, and each "user" is required to pay a tap-in fee for the sewer and water system. By using Mason's sewer and water systems, the family units are tapping into the systems. See, also, U.S.A. Mgt. and Dev. v. Lake Cty.Dept. of Util. (1999), 134 Ohio App.3d 432 (finding that where a landowner connects two new buildings to the water system pipe already in place for his original building, the landowner is tapping into the public water supply). Drees' second argument is without merit.
 {¶ 18} Next, Drees contends that the trial court incorrectly found that it was not equitably bearing the cost of water and sewer service. Drees argues that it has already paid its equitable amount for the cost of the water and sewer system through expansion fees for each of the 320 family units. It also quotes § 941.04 of Mason's code, which states that tap-in charges are for "the costs of all materials and labor required to make the installation from the service line (water and sewer) to the property line." Drees maintains that it is being overcharged for the installation of the meter and pipes as it has already paid these fees.
 {¶ 19} We find Drees' contentions without merit. Again, § 941.20(a) provides that the purpose of these fees is that "the cost of construction of the City's water and sewer services is borne equitably by all users." Pursuant to § 941.20(a), these fees are used for the infrastructure of the water and sewer system.[1] It would be an unfair burden and inequitable for all other owners to pay their fees, but for Drees to not pay for its 320 family units, each of which will be availing themselves of Mason's water and sewer infrastructure. That Drees has paid expansion fees as well is no different from other builders, who must also pay these fees.[2] Paying expansion fees for each family unit does not obviate Mason's requirement that a fee also be paid for sewer and water system service.
 {¶ 20} Furthermore, Drees' reliance upon § 941.04 is misplaced. Section 941.04 contemplates "tap-in" fees for actually placing a meter and running the original pipes to the property. The cost for this is based upon whether Mason installs these items or the landowner does the installation. "Tap-in" in this section is different from the meaning of the phrase in § 941.20. In § 941.20, the sewer and water system fees are charged to each user of the systems. In fact, the fees charged pursuant to §941.04 are placed into a different account. They are different fees charged for different reasons. Drees' third argument is also without merit.
 {¶ 21} Drees finally argues that if "Mason's Ordinances are ambiguous or in conflict, they must be construed against Mason." Mason's ordinances are not ambiguous. It is clear that Drees must pay expansion fees, tap-in fees and sewer and water system fees, among many others. It is also clear that the sewer and water system fees are for each family unit that avails itself of Mason's sewer and water systems. We find Drees' fourth argument to be without merit.
 {¶ 22} Having found all of Drees' assertions to be without merit, the assignment of error is overruled. The trial court properly ordered Drees to pay Mason sewer and water system fees for each of its family units.
Judgment affirmed.
Powell and Walsh, JJ., concur.
[1] In an affidavit, the City of Mason's Finance Director stated that the fees collected from water and sewer permit fees are maintained in a separate fund and used for water and sewer infrastructure.
[2] We note that the expansion fees and water and sewer service fees are placed in different accounts.