[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 121.]

HOME BUILDERS ASSOCIATION OF DAYTON AND THE MIAMI VALLEY ET AL.,
APPELLEES, *v*. CITY OF BEAVERCREEK, APPELLANT.
[Cite as *Home Builders Assn. of Dayton & the Miami Valley v.*
*Beavercreek*, 2000-Ohio-115.]

*Municipal corporations—Streets and highways—Impact fee adopted by ordinance*
*that partially funds new roadway projects is constitutional, when.*

An exaction fee adopted by ordinance that partially funds new roadway projects is
constitutional if it bears a reasonable relationship between the city's interest
in constructing new roadways and the increase in traffic generated by new
developments, and if a reasonable relationship exists, it must then be
demonstrated that there is a reasonable relationship between the impact fee
imposed on a developer and the benefits accruing to the developer from the
construction of new roadways.

(No. 98-2572—Submitted November 2, 1999—Decided June 14, 2000.)

APPEAL from the Court of Appeals for Greene County, Nos. 97-CA-0113
and 97-CA-0115.

————————

{¶ 1} In November 1993, appellant, city of Beavercreek, enacted Ordinance
93-62, which imposes an impact fee on developers of real estate. The ordinance
was amended in December 1995 to increase the impact fee district area. See
Beavercreek Ordinance 95-66. The trial court found that the ordinance was adopted
to enable Beavercreek to recover the costs of constructing new roadways made
necessary by new developments within an impact fee district. This function had,
historically, been met by requiring developers to make improvements to the public
roadways immediately adjacent to their property. The payment of the impact fee is
intended to eliminate the requirement that the fee payer make actual off-site road

improvements. The ordinance is intended to assure that new development bears a proportionate share of the cost of capital expenditures necessary to provide roadways and related traffic facilities in the impact fee district.

{¶ 2} Beavercreek estimated the total cost of improvements necessitated by a one hundred percent development of the impact fee district. Based on the Beavercreek Land Use Plan, an estimate was prepared of residential, office, and commercial development that is projected to occur within the impact fee district. An estimate was also prepared projecting the number of automobile trips each type of development would generate in the impact fee district. Beavercreek then subtracted a percentage for pass-through traffic not generated by new development, and in the 1995 amendment, for pass-by traffic for commercial development. Beavercreek further subtracted another $6.6 million, which it determined would be raised from other funding sources. The remainder was the amount to be financed through the collection of impact fees from the developers of the impact fee district.

{¶ 3} After the impact fee is collected, it is deposited into a separate trust fund established by the city. Section 10(A), Beavercreek Ordinance 93-62. The fee payer may appeal the amount of the fee, or any determination related to the impact fee, to the Impact Fee Appeal Board. Section 17(B), Beavercreek Ordinance 93-62.

{¶ 4} The ordinance defines a list of projects that are exempt from payment of the impact fee. The list includes construction of accessory buildings that will not produce additional traffic, replacement of a destroyed building with one of similar size and use, expansion of a single-family dwelling unit, expansion of any building where the area of expansion is less than 1,500 square feet, and any governmental property. Section 13(A), Beavercreek Ordinance 93-62.

{¶ 5} The ordinance also creates a system of credits against the payment of impact fees. The credits are designated as mandatory or permissive credits. Under the ordinance, all required right-of-way dedications and/or roadway improvements

made by the developer, except for site-related improvements, shall be credited against the impact fee. The developer may also obtain credits by offering nonsite-related right-of-way dedications and/or to construct nonsite-related roadway improvements if the developer follows the correct procedure, as indicated in the Ordinance. Section 14(B), Beavercreek Ordinance 93-62.

{¶ 6} The Beavercreek ordinance further provides that the funds generated from the impact fees are to be used for capital improvements to and expansion of roadways, administrative costs, and expenses related to the impact fee district, and to pay obligations on debt instruments that were issued for the advanced provision of capital improvements, if the impact fee could have been used for the particular project that was financed by the debt instrument. The impact fees may be used outside the impact fee district if the capital improvement is deemed beneficial to the impact fee district and is contiguous to the impact fee district. The funds are not to be used, however, for periodic or routine maintenance. Sections 11(A) through (D), Beavercreek Ordinance 93-62.

{¶ 7} After the enactment of the ordinance, appellees, Home Builders Association of Dayton and the Miami Valley ("HBA"), The Beerman Corporation, Midwest Realty Management Company, and Barbara B. Weprin, Trustee (the latter three will be collectively referred to as "Beerman"), filed complaints against the city of Beavercreek, alleging that the impact fee ordinance is invalid under several constitutional provisions. Beavercreek and HBA filed cross-motions for summary judgment. The trial court granted partial summary judgment to Beavercreek.

{¶ 8} The case proceeded to trial on two issues: (1) whether the ordinance violates substantive due process and equal protection rights, and (2) whether the ordinance constitutes an illegal taking without just compensation under the United States and Ohio Constitutions. After a bench trial, the trial judge ruled that the ordinance is constitutional on all grounds. On appeal, the Second District Court of Appeals reversed the trial court's summary judgment decision, concluding that the

3

ordinance is constitutionally invalid because it does not contain a matching funds provision. Although the court of appeals indicated that the lack of a matching funds provision disposed of the issue, the court defined the test that should be used to evaluate a regulatory takings challenge to the ordinance.

{¶ 9} The case is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*O'Diam, McNamee & Hill, L.P.A., Michael P. McNamee* and *Cynthia P. McNamee*, for appellee Home Builders Association of Dayton and the Miami Valley.

*Taft, Stettinius & Hollister, L.L.P., Thomas R. Schuck* and *Robert B. Craig,* for appellee Barbara B. Weprin, Trustee, The Beerman Corporation, and Midwest Realty Management Company.

*Calfee, Halter & Griswold, L.L.P., Mark I. Wallach* and *Julie A. Harris; David L. Eubank*, for appellant.

*Christopher Senior, pro hac vice*, urging affirmance for *amici curiae*, National Association of Home Builders and International Council of Shipping Centers.

*Patricia S. Eshman*, urging affirmance for *amicus curiae*, Ohio Homebuilders Association.

*Kelley, McCann & Livingstone, L.L.P., Thomas J. Lee* and *Renee B. Weiss*, urging reversal for *amicus curiae*, Cuyahoga County Law Directors' Association.

*Barry M. Byron* and *Stephen L. Byron*, urging reversal for *amicus curiae*, Ohio Municipal League.

———————————

**MOYER, C.J.**

{¶ 10} The issue presented by this appeal is whether Beavercreek Ordinance 93-62, as amended, which establishes a system of impact fees payable

4

by developers of real estate to aid in the cost of new roadway projects, is constitutional. For the following reasons, we hold that the ordinance is constitutional.

{¶ 11} It is well established that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution; see, also, *Cleveland v. Shaker Hts.* (1987), 30 Ohio St.3d 49, 51, 30 OBR 156, 158, 507 N.E.2d 323, 325. This court has consistently held that Section 3 of Article XVIII, or the Home-Rule Amendment, gives municipalities the authority to impose exactions, provided that the municipality is not statutorily forbidden from doing so, and the exactions meet constitutional standards. See, *e.g.*, *Cincinnati v. Cincinnati Bell Tel. Co.* (1998), 81 Ohio St.3d 599, 693 N.E.2d 212, syllabus. The focus here is whether the impact fee ordinance enacted by the city of Beavercreek violates either the United States or Ohio Constitution.

{¶ 12} In its decision, the court of appeals engaged in a comprehensive analysis relating to the question of whether Beavercreek Ordinance 93-62 operates as an impact fee or a tax. While the ordinance clearly adopted an impact fee, its classification as an impact fee or a tax is not determinative for purposes of our constitutional inquiry. Prior cases of this court that address the constitutionality of impact fee ordinances did not find the label placed on an exaction in response to new development to be dispositive. See *Towne Properties, Inc. v. Fairfield* (1977), 50 Ohio St.2d 356, 4 O.O.3d 488, 364 N.E.2d 289; *State ex rel. Waterbury Dev. Co. v. Witten* (1978), 54 Ohio St.2d 412, 8 O.O.3d 410, 377 N.E.2d 505. Rather, the important factor in determining the constitutionality of an ordinance is whether

the ordinance is unduly burdensome in application and not its label as a tax or an impact fee.

{¶ 13} In determining whether Beavercreek Ordinance 93-62 is constitutional, it is necessary to first address the discussion by the court of appeals regarding the lack of a matching funds provision in the Beavercreek ordinance. A matching funds provision would require a city to contribute public funds to roadway projects in an amount that bears some proportion to the fees collected from developers. The court of appeals disposed of all issues before it by holding that Ordinance 93-62 is unconstitutional because it does not require Beavercreek to contribute public funds to the projects for which the impact fee is exacted. In support of this proposition, the court of appeals cites our decisions in *Towne Properties, State ex rel. Waterbury Dev. Co.,* and the decision in *Building Industry, Assn. of Cleveland & Suburban Ctys. v. Westlake* (1995), 103 Ohio App.3d 546, 660 N.E.2d 501, as authority. Upon an analysis of *Towne Properties* and *Waterbury*, we conclude that there is no requirement that an ordinance imposing an impact fee on developers of real estate must contain a matching funds provision to be deemed constitutional.

{¶ 14} In *Towne Properties*, we were asked to determine the constitutionality of a city ordinance that required anyone obtaining a building permit, registering a mobile home pad, or installing manufactured residential units not requiring a building permit to pay a fifty dollar fee. The ordinance was enacted to expand the city's existing facilities in response to its growing population. The revenue collected through the fee, plus an additional amount of public funds, was placed in a special recreational fund created by the ordinance. In upholding the ordinance, we observed that the ordinance was written so that developers paid their proportionate share of the cost of the city's expansion projects, and that the city contributes an equal amount to the fund. *Towne Properties,* 50 Ohio St.2d at 360, 4 O.O.3d at 491, 364 N.E.2d at 292. We did not hold that the matching funds

6

provision was the sole means by which the constitutionality of such an ordinance was to be determined.

{¶ 15} Likewise, in *Waterbury*, we invalidated an ordinance that imposed a water tap charge and a park fee on new developments. The ordinance at issue did not contain a matching funds provision. We, however, based our decision, not on the lack of a matching funds provision, but on the fact that the fee imposed was higher than the actual costs of connecting to a water line and the cost of park development. *Waterbury,* 54 Ohio St.2d at 414-415, 8 O.O.3d at 412, 377 N.E.2d at 506-507.

{¶ 16} Contrary to the opinion of the court of appeals, the lack of a matching funds provision in the Beavercreek ordinance is not constitutionally fatal. That is not to say, however, that the presence or absence of a matching funds provision may not be considered when determining the constitutionality of an impact fee. The appropriate test is one that examines whether the fee is in proportion to the developer's share of the city's costs to construct and maintain roadways that will be used by the general public. See, *e.g*., *Amherst Builders Assn. v. Amherst* (1980), 61 Ohio St.2d 345, 347, 15 O.O.3d 432, 433, 402 N.E.2d 1181, 1183. A matching funds provision is one factor that a court may take into account in determining this balance.

{¶ 17} When examining the Beavercreek ordinance, both the trial court and the court of appeals addressed the plaintiffs' assertion that the ordinance produced an illegal taking of property without just compensation in violation of the United States and Ohio Constitutions. Each court, however, applied a different test to determine whether the ordinance is constitutional.

{¶ 18} The trial court used the dual rational nexus test, which is based on two United States Supreme Court decisions, *Nollan v. California Coastal Comm.* (1987), 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677, and *Dolan v. City of Tigard* (1994), 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304, and a Florida case,

*Hollywood, Inc. v. Broward Cty.* (Fla.App.1983), 431 So.2d 606. The dual rational nexus test requires a court to determine (1) whether there is a reasonable connection between the need for additional capital facilities and the growth in population generated by the subdivision; and (2) if a reasonable connection exists, whether there is a reasonable connection between the expenditure of the funds collected through the imposition of an impact fee, and the benefits accruing to the subdivision. *Hollywood, Inc.,* 431 So.2d at 611-612.

{¶ 19} The court of appeals analyzed the Beavercreek ordinance using a test based upon our decisions in *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533, and *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 690 N.E.2d 510. The test used by the court of appeals states that an impact fee ordinance will be unconstitutional if it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare, or if no reasonable connection exists between the fee and the needs created by development. The issue of which test to apply in evaluating a Takings Clause challenge to an impact fee ordinance is an issue of first impression in this court. It follows that we must define the rule to be applied in determining whether a developer is paying its proportionate share of a city's costs for making improvements necessitated by the development of real estate.

{¶ 20} The tests applied by the trial and appellate courts derived from ordinances that did not impose impact fees. The underlying bases of the "dual rational nexus" test, the *Nollan* and *Dolan* cases, for instance, dealt with land use exactions that forced property owners to dedicate a certain portion of their land to public use. See *Dolan*, 512 U.S. at 377-378, 114 S.Ct. at 2313, 129 L.Ed.2d at 312; *Nollan*, 483 U.S. at 828, 107 S.Ct. at 3143-3144, 97 L.Ed.2d at 683. The *Gerijo* test was a response to ordinances that reclassified the zoning of land. See *Gerijo*, 70 Ohio St.3d at 224, 638 N.E.2d at 535.

{¶ 21} Although impact fees do not threaten property rights to the same degree as land use exactions or zoning laws, there are similarities. Just as forced easements or zoning reclassifications can inhibit the desired use of property, an unreasonable impact fee may affect the manner in which a parcel of land is developed. Further, impact fees are closer in form to land use exactions than to zoning laws. Both forced easements and impact fees, while imposing a condition on the use of land, do not necessarily deny a landowner his or her intended use of the land. Zoning laws, to the contrary, may alter the classification of the land and, therefore, could deny the owner's intended economic use of the property.

{¶ 22} As discussed in the trial court's comprehensive opinion, courts have formulated several tests that can be applied in evaluating a Takings Clause challenge to an impact fee ordinance. These tests vary in the level of scrutiny with which the ordinance will be viewed. It is our opinion that the appropriate test is one that balances the interests of the city and developers of real estate without unduly restricting local government. In developing the appropriate test, we have reviewed the most compelling methodologies.

{¶ 23} In some states, an impact fee ordinance will be held constitutional if there is a reasonable relationship between the exaction and the proposed development. See, *e.g.*, *Associated Home Builders of Greater East Bay, Inc. v. City of Walnut Creek* (1971), 4 Cal.3d 633, 94 Cal.Rptr. 630, 484 P.2d 606. This reasonable relationship test allows local governments to act with almost unfettered discretion. While impact fees are a common means of financing public construction projects associated with new development, local governments should be subject to a higher degree of scrutiny than that afforded by the reasonable relationship test.

{¶ 24} Other states hold that an impact fee ordinance is constitutional if the exaction is specifically and uniquely attributable to the needs of the development. See, *e.g.*, *Pioneer Trust & Sav. Bank v. Village of Mt. Prospect* (1961), 22 Ill.2d 375, 176 N.E.2d 799. Under this test, the local government must demonstrate that

its exaction is directly attributable to the specifically created need. *Id.* at 379-380, 176 N.E.2d at 801-802. Otherwise, it is a confiscation of private property exercised under the shield of the police power. *Id.* This test affords property owners the greatest level of protection, but it leaves local governments with little discretion to enact legislation.

{¶ 25} A third test, the dual rational nexus test, is based on the *Nollan* and *Dolan* cases, and *Hollywood, Inc*. This test applies a middle level of scrutiny that balances the prospective needs of the community against the property rights of the developer. Municipalities must be given the ability to reasonably address problems that are not subject to precise measurement without being subject to unduly strict review. *Banberry Dev. Corp. v. South Jordan City* (Utah 1981), 631 P.2d 899. It is our opinion that the dual rational nexus test balances both the interests of local governments and real estate developers without unnecessary restrictions. The trial court applied this test, and it is also the test we adopt for evaluating the constitutionality of an impact fee ordinance when a Takings Clause challenge is raised.

{¶ 26} The dual rational nexus test places the burden on the city of Beavercreek. In determining the constitutionality of Beavercreek Ordinance 93-62, therefore, the city must first demonstrate that there is a reasonable relationship between the city's interest in constructing new roadways and the increase in traffic generated by new developments. Cf. *Dolan*, 512 U.S. at 386, 114 S.Ct. at 2317, 129 L.Ed.2d at 317. If a reasonable relationship exists, it must then be demonstrated that there is a reasonable relationship between the impact fee imposed by Beavercreek and the benefits accruing to the developer from the construction of new roadways. Cf. *Dolan*, 512 U.S. at 391, 114 S.Ct. at 2319-2320, 129 L.Ed.2d at 320. We believe this test will adequately balance the interests of local governments with those of property owners. The first prong of the test decides whether the ordinance is an appropriate method to address the city's stated interests,

and the second prong assures that the city and developers are paying their proportionate share of the cost of new construction. See *Amherst*, 61 Ohio St.2d at 346-349, 15 O.O.3d at 432-435, 402 N.E.2d at 1182-1184.

{¶ 27} In analyzing the Beavercreek ordinance, we conclude that the test is satisfied. As an initial matter, the city of Beavercreek has a legitimate governmental interest in constructing a new transportation infrastructure in the impact fee district to meet increased traffic needs, an interest that neither party challenged. In order to satisfy the first prong of the test, Beavercreek must show that there is a need for roadway improvements by demonstrating a reasonable relationship between the burden created by the development and the need for the new roadway improvements. To prove that a reasonable relationship exists, Beavercreek must demonstrate that the methodology used to determine the need for roadway improvements funded by the impact fee is based on generally accepted traffic engineering practices. See, *e.g.*, *Northern Illinois Home Builders Assn. v. DuPage Cty.* (1993), 251 Ill.App.3d 494, 190 Ill.Dec. 559, 621 N.E.2d 1012.

{¶ 28} The trial court received testimony and other evidence from numerous witnesses in support of the plaintiffs and the defendant that described the methodology used by the city of Beavercreek in enacting the impact fee ordinance. The witnesses generally agreed that the methodology used to develop a proportionate and reasonable impact fee should consist of several steps. First, the city should develop a comprehensive plan for creating impact fee districts and addressing the needs within those districts. As part of this comprehensive plan, an impact fee ordinance should contain a provision that provides for a review and update of its terms on a regular basis to accommodate changes in, *inter alia*, traffic engineering standards, changes in the need for roadway developments, and receipt of additional revenues by the city.

{¶ 29} Second, the city should establish an inventory of existing roadway facilities to determine whether these facilities meet the standards set forth by the

ordinance for addressing traffic needs. Third, the municipality must determine the cost of new facilities needed to accommodate new development. Finally, the municipality should reduce the cost to be paid by impact fees by the amount of credits the municipality will receive, and by roadway use not associated with new development.

{¶ 30} The trial court, in weighing the evidence, determined that the methodology was reasonable, and that a reasonable relationship existed between the city's need to construct new roadways and the traffic generated by new development. The court of appeals, to the contrary, held that when reviewing the evidence, the trial court placed too much weight on some factors, and not enough weight on other factors. In the opinion of the court of appeals, the trial court's factual determination of reasonableness was erroneous, and a better methodology could be envisioned by the appellate court.

{¶ 31} The role of a court in reviewing the constitutionality of an impact fee ordinance is not to decide which methodology provides the best results. Given that impact fee ordinances are not subject to precise mathematical formulation, choosing the best methodology is a difficult task that the legislature, not the courts, is better able to accomplish. Rather, a court must only determine whether the methodology used is reasonable based on the evidence presented.

{¶ 32} When reaching a factual determination, the trial court is in the best position to evaluate the testimony of witnesses and the evidence presented. See *State v. Hawkins* (1993), 66 Ohio St.3d 339, 344, 612 N.E.2d 1227, 1231; *In re Lieberman* (1955), 163 Ohio St. 35, 38, 56 O.O. 23, 24, 125 N.E.2d 328, 330. Further, a reviewing court will not disturb factual findings of the trial court unless those findings are against the manifest weight of the evidence. *State ex rel. Shady Acres Nursing Home v. Rhodes* (1983), 7 Ohio St.3d 7, 7 OBR 318, 455 N.E.2d 489. Based on this record, we find that there is competent, credible evidence to support the judgment of the trial court, and its factual conclusions should not have

been disturbed by the court of appeals. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276.

{¶ 33} Once a reasonable relationship is found to exist between the city's need to construct new roadways and the traffic generated by new development, the second prong of the test requires Beavercreek to demonstrate a reasonable relationship between the fee imposed on a developer and the benefits accruing to the developer. This portion of the test addresses whether the developer and the city are paying their proportionate shares of the costs necessary to construct new roadways. When evaluating this prong, a court should consider the actual costs of constructing new roadways, the formula used to determine the fee, the fee paid by a particular developer, the city's contribution, road improvements made directly by developers, the length of time between the payment of the fee and new roadway construction projects, whether the roadway projects are site-specific to the new development, and any other criterion that bears on the reasonableness of the fee.

{¶ 34} As previously mentioned, a matching funds provision may be used to measure a city's contribution in determining whether the fee imposed on a developer of real estate is proportional to the city's cost. A matching funds provision, however, is not the only permissible way in which a city can make a contribution to a roadway development project. For instance, the Beavercreek ordinance establishes a system of mandatory and permissive credits against the payment of impact fees. Under the ordinance, a developer shall receive a credit for all required right-of-way dedications or improvements made directly by the developer. Section 14(B), Beavercreek Ordinance 93-62. The developer may also obtain credits by offering nonsite-related right-of-way dedications or improvements. Section 14(C), Beavercreek Ordinance 93-62. In effect, Beavercreek makes a contribution by transferring a portion of the cost to construct new roadway projects, which otherwise would have been paid by the developer through a higher impact fee, back to the city through a system of credits.

**{¶ 35}** With regard to the system of credits, the plaintiffs argue that the Beavercreek ordinance is constitutionally flawed because the city has no obligation to apply credits within a specific period of time and, therefore, developers will pay a disproportionate share of the costs of new roadway projects. The lack of a specific time limit for the application of credits due under the ordinance is not facially unconstitutional. Further, as noted by the trial court, the appellees have not presented any evidence that the ordinance as applied to any particular developer is unconstitutional. That is not to say, however, that an as-applied challenge to the ordinance for failure to issue credits within a reasonable time would not be sustained. Much as the presence of a matching funds provision is one factor in determining the reasonableness of an impact fee ordinance, so too is the manner in which a municipality applies credits owed to developers.

**{¶ 36}** The trial court reviewed volumes of evidence relating to the methodology and functioning of the Beavercreek ordinance. The trial court, in reviewing this evidence, found that the fees were reasonable and that a reasonable relationship existed between the fee paid and the benefits accruing to developers. We find this conclusion to be supported by competent, credible evidence contained in the record, and these factual conclusions should not have been disturbed by the court of appeals. See *Seasons Coal Co.*, *supra,* 10 Ohio St.3d at 80, 10 OBR at 411, 461 N.E.2d at 1276.

**{¶ 37}** We conclude that Beavercreek Ordinance 93-62, as amended, is not constitutionally flawed due to its lack of a matching funds provision. We further hold that the Beavercreek ordinance does not constitute an illegal taking of the plaintiffs' property without just compensation in violation of the United States and Ohio Constitutions. Accordingly, the judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

DOUGLAS, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

COOK, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 38} The majority states that the ordinance's "classification as an impact fee or a tax is not determinative for purposes of our constitutional inquiry." I beg to differ. According to Section 2, Article XII of the Ohio Constitution, "Land and improvements thereon shall be taxed by uniform rule according to value." See *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908; *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1972), 32 Ohio St.2d 28, 29, 61 O.O.2d 238, 238, 289 N.E.2d 579, 580. Most of the existing infrastructure in Beavercreek and other cities and towns was paid for by the city or town. Here, however, Beavercreek is attempting to force developers to pay for improvements or additions to infrastructure as a *quid pro quo* for developing a site, even when the improvements or additions occur beyond the property lines of the development. This strikes me as a tax, and, since it is not applied uniformly, as an unconstitutional tax.

{¶ 39} Alternatively, if it is necessary to formulate a test to evaluate a Takings Clause challenge to an impact fee ordinance, I would favor a stricter test than that put forth by the majority. I would hold that "an impact fee ordinance is constitutional if the exaction is specifically and uniquely attributable to the needs of the development."

{¶ 40} Finally, the ordinance at issue does not meet the second part of the majority's dual rational nexus test, which requires that there be a reasonable relationship between the impact fee imposed and the benefits accruing to the developer. Even though this is an incredibly light standard, it is not clear that developers will receive any benefit. After all, Beavercreek is not obligated to contribute any of its own money and the impact fee money alone is insufficient to

pay for the entire cost of the roadway improvements.  How can there be a reasonable relationship between certain impact fees and uncertain benefits?  I would hold that the dual rational nexus test formulated by the majority is not met.

{¶ 41} I would affirm the judgment of the court of appeals.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____

**COOK, J., dissenting.**

{¶ 42} I respectfully dissent.  I would affirm the judgment of the court of appeals by adopting the reasoning from Part II of its opinion.

_____