DECISION.
Plaintiff-appellant Mike Kaeser appeals from the July 6, 2001, judgment of the Hamilton County Court of Common Pleas. Kaeser raises three assignments of error for our review. Because we find none of the assignments to have merit, we affirm the judgment of the trial court.
Facts and Procedural History
In October 1997, Gross was employed at Kaeser's towing and auto body shop. Gross also worked as a handyman at various rental properties owned by Kaeser. In early October 1997, Gross was arrested for driving under the influence of alcohol. He telephoned Kaeser for help in posting his $1,000 bond. Kaeser agreed to post the bond and to aid in procuring an attorney to represent Gross in the DUI case on the condition that Gross give him the deed to his home as collateral. Kaeser wanted to hold the deed to ensure that Gross remained in town and returned to work for him. Gross agreed to return to work for Kaeser and to pay Kaeser back out of his wages for all monies advanced to secure his release from jail.
Shortly thereafter, Kaeser sent his attorney and cousin, Robert Roeller, to the county jail to arrange for Gross's bond and to have Gross sign an agreement that Roeller had drafted. At the time of the agreement, Gross owned his house free and clear. The agreement stated as follows:
 I, Charlie Gross, hereby agree with Mike Kaeser that I will pay out of my wages and other income the total amount necessary to pay my real estate taxes, my legal bills, court costs and deed expenses and any other moneys necessary to obtain my release from jail, fully dispose of my criminal DUI charges and other charges, if any.
 I further agree that any money advanced by Mike Kaeser be first paid from my wages. If for any reason I am unable to perform work, then I agree to pay Mike Kaeser weekly out of any income I receive from any sources whatsoever.
 If for any reason I fail to pay Mike Kaeser and this agreement is in default, I agree he will have the right to declare the entire amount due and payable at once and expect that he will file a lawsuit to obtain judgment against me for the amount then due and owing at that time.
 Gross's signature appears at the bottom of the agreement. Gross also signed a general warranty deed, which stated that Gross granted his home to Kaeser for valuable consideration.
After Gross was released from jail in October 1997, he returned to work for Kaeser. He worked approximately 40 to 50 hours per week at a rate of eight dollars per hour until he ceased working for Kaeser in late December 1997. Gross worked approximately nine weeks for Kaeser after his release from jail and paid Kaeser out of his wages $100 to $200 each week for seven weeks. Kaeser never paid Gross approximately $500 that Gross was owed for his last two weeks of work.
Despite Gross's repeated inquiries concerning the status of his debt, and despite his weekly payments, the debt continued to increase as Kaeser included other debts, such as monies loaned for child support, that were not encompassed by the agreement. Frustrated with the situation, Gross ceased working for Kaeser. Kaeser refused to return the deed to the property.
In the fall of 1998, Kaeser initiated a forcible detainer and eviction action in municipal court against Gross, who had been living in the house since his release from jail. Kaeser claimed that Gross was a holdover tenant. Gross filed an answer and a counterclaim in which he alleged that he was the true owner of the property. Due to the allegations in Gross's counterclaim, the case was transferred to the common pleas court.
Shortly thereafter, both parties amended their claims. Kaeser's amended complaint included claims for eviction, back rent in the amount of $13,000, and waste in the amount of $10,000, and a prayer for a judgment declaring him the rightful owner of the home. Gross denied these claims and counterclaimed for breach of contract, promissory estoppel, fraud, and unlawful retention of wages, and sought an order declaring him the rightful owner of the house and quieting title to the house in his name. In September 2000, both parties moved for summary judgment.
On October 31, 2000, the trial court issued an opinion denying Kaeser's motion for summary judgment and granting in part Gross's motion for summary judgment. In its entry, the trial court opined that the transaction between the two parties, whereby Gross had transferred the title to his home to Kaeser to hold as security for the repayment of his DUI-related debts, constituted a mortgage upon and not a deeding over of the property. The trial court further determined that two issues remained for trial. The first issue was whether Gross had repaid all the monies Kaeser had loaned him under the mortgage agreement. The second issue was whether any rental agreement had existed between Kaeser and Gross, and if so, what, if any, rent Gross owed to Kaeser.
On the morning of trial, Kaeser and Gross entered into a settlement agreement with respect to the monies Gross owed for his DUI-related expenses. The parties agreed on the record that Gross would pay $4,500 to Kaeser to discharge the mortgage. The parties then tried the remaining rental issue to the court.
On June 20, 2001, the trial court adopted Gross's proposed findings of fact and conclusions of law. It ruled that no credible evidence had been presented as to the existence of a rental agreement between Kaeser and Gross. Consequently, the trial court entered a judgment that stated as follows: (1) that Kaeser recover from Gross the sum of $4,500 for monies Kaeser had advanced to Gross; (2) that Gross's transfer of the deed to his home to Kaeser constituted a mortgage upon and not a deeding over of the property; (3) that the title to the property be quieted in Gross's name, and the deed be quit-claimed, registered, and recorded in Gross's name; and (4) that no rental agreement existed between the parties and, therefore, Gross owed no rent to Kaeser. It is from this judgment that Kaeser now appeals, raising three assignments of error.
Analysis
In his first assignment of error, Kaeser argues that the trial court erred in granting Gross's motion for summary judgment in part. Kaeser argues that the trial court's ruling-that the agreement between the parties was not an absolute deeding of the property, but a mortgage arrangement-is incorrect. He contends that the agreement was an absolute deeding over of the property, which Gross should be held to, and that even if it were not a deeding over of the property, the agreement was somehow an agreement to a condition precedent, which required that Gross pay all monies owed before the deed would be released.
In response, Gross argues that summary judgment was appropriate because the undisputed facts demonstrate that he transferred the deed to his home to Kaeser as collateral. Thus, Gross contends, principles of equity required the transaction to be viewed as a mortgage. We agree with Gross.
Summary judgment shall be granted when "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party."[1] We review the record de novo to determine if summary judgment was appropriate.[2]
Ohio courts have consistently held that an instrument in the form of a deed may be construed in equity to be a mortgage if it is demonstrated that it was intended by the parties to convey the property involved as security for a debt or an obligation.[3] The Ohio Supreme Court inWilson v. Giddings found the gross inadequacy of price and continued possession by the plaintiff to provide strong support for the determination that a plaintiff's conveyance of real estate to a defendant, although absolute in form, was not a sale absolute, but an equitable mortgage.[4]
In Krippendorf v. Ormsby,[5] this court addressed a factual scenario similar to the one before us. In Krippendorf, a woman who was facing financial problems sought to borrow money from an attorney. To secure repayment of the monies advanced by the attorney, the woman agreed to deed some real estate over to the attorney with the understanding that the attorney would reconvey the real estate once the monies had been repaid. The attorney later maintained that he owned the real estate, and he refused to reconvey it to the woman.
This court, relying upon the decision in Wilson, found that the whole purpose of the conveyance of the real estate made by the woman to the attorney was to secure repayment of the monies that the attorney had agreed to advance to her. Thus, the "contract was in fact a mortgage." Consequently, we held that the woman was entitled to have the property reconveyed to her.
This case is like Krippendorf. Here, the undisputed facts show that Gross was in need of money to post bond to get out of jail. Kaeser agreed to advance the money on Gross's behalf on the condition that Gross repay Kaeser the monies advanced. Gross then transferred the deed to his house to Kaeser to hold as security. Both men understood that, once Gross had repaid Kaeser for the monies advanced, Kaeser would reconvey the title to the property to Gross.
During his deposition, Kaeser stated that he "wouldn't loan [Gross] any money at all unless he had collateral." He further testified that he "got the deed to [Gross's] home." When asked when Gross would get his house back, Kaeser replied, "When he paid me off." Thus, Kaeser's argument-that his agreement with Gross was an absolute deeding of the property-is belied by his own testimony.
We also reject Kaeser's contention that he and Gross had agreed to the repayment of the DUI-related debts by Gross as a condition precedent to Kaeser's reconveyance of the property. Kaeser appears to argue that, because the parties had stipulated that Gross would pay him $4,500 and Gross has made no such payments, the condition precedent to Kaeser's reconveyance of the property has not been met. Kaeser, however, has cited no legal support nor any support from the factual record to support his argument. Nor do we find anything in the record to support such an argument. Instead, Kaeser appears to have waived this argument on the morning of trial when he agreed that any mortgage-related issues had been settled. As a result, we find Kaeser's argument without merit.
The undisputed facts and law support Gross's position that the agreement, although absolute in form, was not a sale absolute, but a mortgage. Therefore, summary judgment was appropriate for Gross as a matter of law. Accordingly, we overrule the first assignment of error.
In his second assignment of error, Kaeser contends that the evidence does not support the trial court's finding that no rental agreement existed between the parties. Gross, on the other hand, argues that there was ample credible evidence in the record to support the trial court's conclusion. We agree with Gross.
When a party challenges the verdict in a civil proceeding as being against the manifest weight of the evidence, this court's only role is to determine whether there is some competent, credible evidence supporting that verdict.[6] When the verdict turns upon the credibility of testimony, and there exists some competent and credible evidence to support the findings and conclusions of the trier of fact, the reviewing court must give deference to those findings and conclusions.[7] That is because the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use these observations in weighing the credibility of the testimony.[8]
In this case, the trial court found that Kaeser had presented no credible evidence of the existence of a lease agreement between himself and Gross. At trial, Kaeser testified and presented testimony from his attorney and cousin, Robert Roeller, from his aunt and bookkeeper, Rose Kaeser, and from Gross. Roeller testified on direct examination that Kaeser and Gross had had a verbal lease agreement, and that he had told Gross during their jail-house meeting that he would have to pay rent. Roeller, admitted, however, on cross examination, that the written agreement he had drafted did not mention a lease agreement or rental monies.
Rose Kaeser testified that, although she had heard Kaeser tell Gross that he would have to pay rent in exchange for securing his release from jail, she had never actually heard Gross agree to pay rent. She also admitted that, despite maintaining a ledger that detailed all the debts Gross owed Kaeser and included amounts as miniscule as $10 for beer money, she never recorded a single entry regarding rent until after discovery had taken place in the case, when she went back and filled in the rent amount on the last page of the ledger.
During his testimony Kaeser admitted that his written agreement with Gross had said nothing about rent or a lease. He maintained, however, that he and Gross had entered into a separate rental agreement, in which Gross had verbally agreed to pay $500 in rent each month beginning in October 1997. Kaeser admitted on cross-examination, though, that he had never demanded rent from Gross, had never kept any tab or written record of the rent Gross owed, and had never collected any rent from Gross.
Gross testified that he had never entered into an oral or written lease agreement with Kaeser, and that Kaeser had never demanded any rent monies from him. In addition, he testified that, under his agreement with Kaeser, he had understood that Kaeser would hold the deed to the house as security for his repayment of the monies due under their written agreement.
Having reviewed the record, we conclude that the trial court's finding that Kaeser had presented no credible evidence of the existence of a rental agreement with Gross was clearly supported by some competent, credible evidence. Consequently, we overrule the second assignment of error.
In his third assignment of error, Kaeser contends that, even if the trial court was correct in construing the parties' agreement as a mortgage, the trial court erred by failing to delineate the terms of the mortgage. We are unpersuaded.
The trial court's entry clearly stated that Gross would pay $4,500 to Kaeser, and that title then would be quieted in Gross's name. Thus, it is logical to assume that, once Gross paid the $4,500, the mortgage would be released and title to the property quieted in Gross's name. Given that the trial court's entry clearly stated the amount due under the mortgage, we fail to see what further delineation was necessary. We, therefore, overrule the third assignment of error.
In closing, we note that, if ever there were a situation that cried out for a court to use its equitable powers, this was the case. Here, an employee, who was in legal and financial difficulties, asked his employer for help. He made an agreement whereby his home was held as collateral for the repayment of his debts. The employer, seemingly intent on keeping the employee's property, went to extreme lengths to keep the employee from repaying his debt, first, by adding new debts not encompassed by the original agreement and, later, by attempting to evict the employee from his home. Here, the trial court used its equitable powers to term the agreement a mortgage. By doing so, it prevented Kaeser from retaining ownership in a $40,000 home in exchange for lending Gross roughly $6,000, some of which Gross had already repaid. Such a result would have been fundamentally unfair. Consequently, we affirm the judgment of the trial court.
Judgment affirmed.
Painter, P.J., Hildebrandt and Sundermann, JJ.
[1] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; see Civ.R. 56(C).
[2] See Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[3] See Bank v. Johnson (1889), 47 Ohio St. 306, 24 N.E. 503; Patrickv. Littell (1880), 36 Ohio St. 79, 82; Wilson v. Giddings (1876),28 Ohio St. 554.
[4] 28 Ohio St. at 566.
[5] (1915), 23 Ohio C.C. (N.S.) 273, 26 Ohio C.D. 172.
[6] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[7] See Home Builders Assn. of Dayton the Miami Valley v. City ofBeavercreek, 89 Ohio St.3d 121, 129-130, 2000-Ohio-115,729 N.E.2d 349.
[8] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80, 461 N.E.2d 1273.