[Cite as *Cook Road Invests., L.L.C. v. Cuyahoga Cty. Bd. of Commrs.*, 194 Ohio App.3d 562, 2011-Ohio-2151.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95416**

## COOK ROAD INVESTMENTS, L.L.C.

APPELLANT,

v.

## BOARD OF CUYAHOGA COUNTY COMMISSIONERS,

APPELLEE.

### JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-656880

**BEFORE:** Cooney, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 5, 2011

Berns, Ockner & Greenberger, L.L.C., Benjamin J. Ockner, and Gary F. Werner, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Dale F. Pelsozy, Assistant Prosecuting Attorney, for appellee.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant, Cook Road Investments, LLC ("Cook"), appeals a judgment in favor of defendant-appellee, Cuyahoga Board of County Commissioners, declaring that the county's sanitary-connection fees charged to Cook's property were constitutional. We find merit to the appeal and reverse.

{¶ 2} This case arises from Cook's development of two parcels of land consisting of 14 acres on the north side of Cook Road in Olmsted Township. Cook purchased the property in the spring of 2004 intending to build a 120-unit senior apartment complex, The Arbors.

{¶ 3} The Arbors is located in a part of the township that constitutes the northwest corner of Cuyahoga County's Sanitary Sewer District No. 14 ("District 14"). District 14 consists of three distinct areas of the township: (1) the "service area," which is serviced by the city of North Olmsted Sanitary Sewer System, (2) the southwest area, which is serviced by the Northeast Ohio Regional Sewer District ("NEORSD"), and (3) the eastern area, in which there are no sewers. The service area of District 14 is serviced by the North Olmsted sewer system as a result of topographical conditions that allow

effluent to flow downhill to the North Olmsted sewer system.[1]   Consequently Cuyahoga County and the city of North Olmsted have had various service agreements since 1965 under which North Olmsted has agreed to accept effluent from the northwest corner of District 14, which has been designated as the service area.  Section 2.02 of the current Sewer Service Agreement provides:

> Users within the Service Area shall pay a charge for a tap-in or curb connection to a sanitary sewer in the Service Area as set forth in Chapter 911 of the Codified Ordinances of North Olmsted. * * * Such tap-in or connection charges shall be collected by North Olmsted as the agent of the County prior to the issuance of a permit in accordance with subsection 2.01.

{¶ 4}  The service agreement limits the amount of effluent North Olmsted will allow into its system, and once that limit is reached, the county must contain and manage the sewage within its own sanitary-sewer system.

{¶ 5}  At about the same time that Cook was planning its development, the township asked the board to construct additional sewers in District 14 to service the rest of the township.  The board required the township to commission an engineering study to determine the configuration, cost, and methods of financing the new sanitary sewers. The township hired Ruth Langsner, a sanitary engineer, who performed the study and produced a report identifying the areas with existing sewers and the areas that did not have sewers.  The areas that did not have sewers were to be charged the cost of

---

[1]  In order for the Northeast Ohio Regional Sewer District to contain the sewage within District 14, the sewer system requires a pump station because the land slopes downhill toward North Olmsted.   Pump stations are expensive to build and even more expensive to operate and maintain.

constructing a sewer system based upon Langsner's estimates. The goal was to distribute the capital costs of sewer installation equitably throughout the district in the hopes of recovering the expenditure of tax dollars from the users of the new sewers over a period of time. Those properties that already had sewers would not be charged, because they had already paid for their sewers and would receive no new benefit.

{¶ 6} The board accepted the Langsner report by resolution and determined that it would pay the costs of the system by implementing the three-part connection-fee schedule set forth in the report. These fees consist of (1) "Permit and/or Inspection Fee," which constitutes a general administrative cost,; (2) "Intercepting or Trunk Sewer Connection Fee," which is charged to everyone in the district according to its number of "use benefits," and (3) "Local Sewer Connection Fee," which is charged only if the county installs the local line that serves the particular property. Cook is not challenging the permit fee, and no local connection fees were charged, because Cook had the local connections installed at its own expense. Hence, the trunk-sewer connection fee is the only fee at issue in this dispute.

{¶ 7} Under Langsner's plan, one "use benefit" unit is equivalent to one single-family home. A single-unit apartment is charged three quarters of a use benefit because generally fewer people live in an apartment than in a single-family home. At the time Cook purchased the property, it was zoned for single-family homes of approximately one acre per home. When Langsner completed her report, the property was still zoned

single-family, and she calculated the connection fees for the property on that basis. Langsner testified that basing the plan on the existing zoning form is a generally accepted engineering practice because it is impossible to predict how land will be developed in the future. She also admitted that she devised her three-part connection fee schedule without regard to the Sewer Service Agreement between the county and North Olmsted.

{¶ 8} After Cook purchased the property, the property was rezoned to multifamily to accommodate 120 apartment units. Cook paid $260,180 to North Olmsted for the privilege of connecting The Arbors to the city's sewer system because the property is located in the service area of District 14, which is serviced by the North Olmsted sanitary-sewer system. Nevertheless, the Cuyahoga County engineer's office informed Cook that it would charge connection fees to its property based upon the number of units. The county also informed Cook that Cook could not construct its project without sewers. The only access to sewers was through a county right of way.

{¶ 9} Cook pursued the project and sought permission to install sewers rather than wait for the board's sewer project to reach them. The board gave its permission but required payment of connection fees before the construction could proceed. Cook paid $254,380.29 in fees for 120 apartment units under the Langsner plan and indicated on the checks that they were "paid under protest" because it had already paid connection fees to North Olmsted. Cook brought this action to recover the connection fees it paid to Cuyahoga County under protest.

{¶ 10} After a bench trial, the trial court entered judgment declaring that the Ohio Constitution does not require the board to return the $254,380.29 sewer-connection fee to Cook. In other words, the trial court found that the $254,380.29 Cook paid to the county did not constitute an unconstitutional taking of its property. Cook now appeals, raising two assignments of error.

## Standard of Review

{¶ 11} In reviewing a judgment from a bench trial, an appellate court must afford deference to a trial court's decision and "must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 616, 614 N.E.2d 742. When making a factual determination, the trial court is in the best position to evaluate the testimony of witnesses and the evidence presented. *Home Builders Assn. of Dayton & Miami Valley v. Beavercreek* (2000), 89 Ohio St.3d 121, 129, 729 N.E.2d 349. Hence, a reviewing court will not disturb factual findings of the trial court unless those findings are against the manifest weight of the evidence. Id., citing *State ex rel. Shady Acres Nursing Home v. Rhodes* (1983), 7 Ohio St.3d 7, 455 N.E.2d 489. However, we review application of the law to the facts de novo. *Pottmeyer v. Douglas*, Washington App. No. 10CA7, 2010-Ohio-5293, ¶21.

## Dual Rational Nexus Test

{¶ 12} In the first assignment of error, Cook argues that the trial court erred in failing to apply the "dual rational-nexus test" set forth in *Home Builders* to determine whether the connection fee that the board charged Cook for sewer installation was unconstitutional. Cook contends that the connection fee of $254,380.29 constituted an unconstitutional taking of its property under *Home Builders*.

{¶ 13} In *Home Builders*, a homebuilders' association and developers challenged the constitutionality of the city of Beavercreek's impact-fee ordinance for funding roadway improvements for a new development. In finding that the impact fees were constitutional, the Ohio Supreme Court applied the following dual rational-nexus test:

> An exaction fee adopted by ordinance that partially funds new roadway projects is constitutional if it bears a reasonable relationship between the city's interest in constructing new roadways and the increase in traffic generated by new developments, and if a reasonable relationship exists, it must then be demonstrated that there is a reasonable relationship between the impact fee imposed on the developer and the benefits accruing to [the] developer from the construction of new roadways.

89 Ohio St.3d 121, 729, N.E.2d 349

{¶ 14} Cook argues that because The Arbors does not use any of the county's trunk sewers and all of its sewage flows to the North Olmsted sewer system, it does not benefit from the new sewers being constructed in District 14. Because none of the benefits of the county's new system accrue to The Arbors, Cook argues that the dual rational-nexus test set forth in *Home Builders* is not met. Cook concludes that because the dual

rational-nexus test is not met, the connection fees it paid to Cuyahoga County constitute an unconstitutional taking of its property under *Home Builders*.

{¶ 15} However, the authority to impose the impact fees in *Home Builders* was derived by local ordinance. Connection fees for sewer installations are authorized by R.C. Chapter 6117, which provides a less stringent standard. R.C. 6117.02 provides:

> (A) The board of county commissioners shall fix reasonable rates, including penalties for late payments, for the use, or the availability for use, of the sanitary facilities of a sewer district to be paid by every person and public agency whose premises are served, or capable of being served, by a connection directly or indirectly to those facilities when those facilities are owned or operated by the county and may change the rates from time to time as it considers advisable. When the sanitary facilities to be used by the county are owned by another public agency or person, the schedule of rates to be charged by the public agency or person for the use of the facilities by the county, or the formula or other procedure for their determination, shall be approved by the board at the time it enters into a contract for that use.

> \* \* \*

> (D) The board may fix reasonable rates and charges, including connection charges and penalties for late payments, to be paid by any person or public agency owning or having possession or control of any properties that are connected with, capable of being served by, or otherwise served directly or indirectly by, drainage facilities owned or operated by or under the jurisdiction of the county, including, but not limited to, properties requiring, or lying within an area of the district requiring, in the judgment of the board, the collection, control, or abatement of waters originating or accumulating in, or flowing in, into, or through, the district, and may change those rates and charges from time to time as it considers advisable.

{¶ 16} In *Huber v. Denger* (1988), 38 Ohio St.3d 162, 527 N.E.2d 802, the Ohio Supreme Court interpreted R.C. 6117.02 as authorizing a board of county commissioners to allocate the cost of a facility serving a portion of a sewer district among all the

residents of the district. In that case, several residents of the Beavercreek area sued the Greene County sanitary engineer and the board of commissioners, alleging that the portion of sewer rates attributable to a neighboring plant and assessed against the residents of Beavercreek was illegal because the residents derived no benefit from the plant and were not even connected to the plant. In finding that the fees were valid, the Supreme Court explained, "It is apparent from a review of these two sections [R.C. 6117.01 and 6117.02] that the rates assessed for maintenance of the sewer works of a district are not dependent upon the fact that the ratepayer be physically attached to the particular facility for which debt servicing is required. Rather, reasonable rates may be charged to ratepayers for any facility operated and maintained by the district." Id. at 164. The court further explained:

> This approach appears to be eminently sensible. To hold otherwise would result in the Balkanization of financial support for treatment plants by constricting the base upon which the cost of the facility would be spread. It would defeat the purposes of a unified sewer district envisioned by R.C. Chapter 6117 and virtually foreclose the possibility of generating the local capital necessary to construct or improve the facilities so as to conform to state and federal environmental laws.

Id.

{¶ 17} Therefore, the dual rational-nexus test set forth in *Home Builders* for assessing the constitutionality of impact fees authorized by local ordinance does not apply to sewer-connection fees. R.C. Chapter 6117 authorizes counties to allocate the cost of a

sewer system among all residents of the district even if some of those residents do not directly benefit from the system. *Huber* 38 Ohio St.3d at 165, 527 N.E.2d 802.

{¶ 18} Accordingly, the first assignment of error is overruled.

## The North Olmsted Agreement

{¶ 19} In the second assignment of error, Cook argues that the trial court erred by failing to declare that the trunk-sewer fee that Cook paid to the county under protest amounted to an unconstitutional taking of its property as applied to The Arbors. Cook argues the connection fees it paid to Cuyahoga County constituted an unconstitutional taking because none of the relevant trunk sewers will benefit, or be burdened by, The Arbors.

{¶ 20} As previously explained, the Ohio Supreme Court held in *Huber* that R.C. Chapter 6117 authorizes a board of county commissioners to allocate the cost of a new facility among all residents regardless of benefit. *Huber* at syllabus. However, the facts of the instant case are unique in that Cuyahoga County has a valid agreement with the city of North Olmsted regarding the collection of connection fees from users in the service area because the North Olmsted sanitary-sewer system serves the service area of District 14. Langsner admitted that she devised the three-part connection-fee schedule that the county adopted without regard to the Sewer Service Agreement provisions governing the service-area connections and connection-fees.

{¶ 21} In determining whether the connection fees that Cook paid to Cuyahoga County constituted an unconstitutional taking of its property, *Adkins v. Bd. of Cty. Commrs. of Wayne Cty.* (May 17, 1989), Wayne App. No. 2404, is instructive. In *Adkins*, the court held that the Wayne County Board of Commissioners' proposed plan to charge user fees to residents and owners pursuant to R.C. Chapter 6117 did not constitute an unconstitutional taking of property without due process of law. In making this determination, the court held that, generally, a governmental taking of property is constitutional " 'if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' " Id. at *4, quoting *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 146 N.E.2d 854, paragraph five of the syllabus, citing *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 205 N.E.2d 363, and *Downing v. Cook* (1982), 69 Ohio St.2d 149, 431 N.E.2d 995.

{¶ 22} Here, Cook paid connection fees to North Olmsted because The Arbors is located in the service area of District 14, which is governed by the Sewer Service Agreement between Cuyahoga County and North Olmsted. Under Section 2.02 of this agreement, the board has agreed that North Olmsted will collect connection fees from users in the service area "as the agent of the County prior to the issuance of a permit in accordance with subsection 2.01." Subsection 2.01 provides:

> No connection to the sewers in the Service Area shall be made until after the issuance of a permit for that purpose by the County Sanitary Engineer. No such permit shall be issued until the City Engineer has notified the County Sanitary Engineer that the user

applying for the permit has paid the tap-in or connection charge in accordance with subsection 2.02.

{¶ 23} Under the Sewer Service Agreement, the board is not entitled to collect sewer-connection fees from users in the service area, because North Olmsted collects the fees "as the agent of the County." Cook having already paid the required sewer-connection fees, in the amount of $260,180 to North Olmsted as the agent for the county, the county's taking of an additional $254,380.29 is arbitrary and unreasonable. Accordingly, we find the $254,380.29 that Cook paid to Cuyahoga County for connection fees was an unconstitutional taking of its property.

{¶ 24} The board argues that Cook failed to follow the proper procedure set forth in R.C. 2723.03 for paying fees under protest and that its failure results in forfeiture of those fees. We disagree.

{¶ 25} First, the board asserts that connection fees are assessments. In order to maintain an action for the recovery of taxes or assessments, R.C. 2723.03 requires a plaintiff to allege and prove that he filed a written protest and notice of intention to sue at the time of paying the tax or assessment. The Ohio Supreme Court has held that these requirements are mandatory. *Ryan v. Tracy* (1983), 6 Ohio St.3d 363, 365, 453 N.E.2d 661. The failure to comply with these requirements bars a later lawsuit by a taxpayer. Id.

{¶ 26} However, the Ohio Supreme Court has determined that connection fees, also called "tap-in fees," charged for the privilege of connecting to a sanitary sewer

district are not assessments. *Amherst Builders Assn. v. Amherst* (1980), 61 Ohio St.2d 345, 350, 402 N.E.2d 1181. The *Amherst c*ourt explained:

> The court below determined that the tap-in charge was an "assessment"' as that term is used in R.C. 2723.03, so that appellant's failure to file a written protest with its payment of the fees precluded recovery of the fees, even if it had prevailed in having the ordinance invalidated. This conclusion disregards the fact that an assessment is normally levied against all property in the service area, unimproved as well as improved, while this fee is only imposed when a new user desires to connect to the sewer system.
>
> In [*State ex rel.*] *Stoeckle* [*v. Jones*], (161 Ohio St. 391), at page 393, 119 N.E.2d at page 836, this court recognized this distinction, stating that "the charge is not in fact a second assessment but * * * is a charge for permission to connect with the sewer * * *." See, also, *State ex rel. Gordon v. Taylor* (1948), 149 Ohio St. 427, 434, 79 N.E.2d 127, declaring that "* * * it is well established that charges for sewer services * * * are neither taxes nor assessments." Thus we find the provisions of R.C. 2723.03 to be inapplicable to this action.

{¶ 27} Here, users in District 14 are charged connection fees when they apply to connect to the sanitary-sewer system. Those in the district who have already paid connection fees are not charged. Only users connecting to the system are charged at the time of connection. Following *Amherst,* we find that the connection fees at issue here are neither taxes nor assessments and that the strict procedural requirements of R.C. 2723.03 for paying fees under protest do not apply. The court having determined that the county's requiring additional connection fees in the amount of $254,380.29 was an unconstitutional taking, Cook is entitled to a refund of those fees.

Judgment reversed.

ROCCO, J., concurs.

BOYLE, P.J., concurs in judgment only.