[Cite as *Tisdale v. White*, 2011-Ohio-3065.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95793**

## DON TISDALE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## KENNETH A. WHITE, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-654685

**BEFORE:**  Blackmon, P.J., Stewart, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 23, 2011

**ATTORNEY FOR APPELLANT**

James R. Willis
420 Lakeside Place
323 W. Lakeside Avenue
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Douglas A. King
34 South Main Street
Chagrin Falls, Ohio 44022

PATRICIA ANN BLACKMON, P.J.:

{¶ 1}   Appellant Don Tisdale appeals the trial court's judgment in favor of Kenneth A. White and assigns the following error for our review:

> **"I. The Court's judgment in favor of the defendants is against the manifest weight of the evidence and is contrary to law."**

{¶ 2}   Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

{¶ 3}   On May 2, 2006, Don Tisdale, the president of First Street Enterprise, entered into a written agreement with his cousin, Kenneth White, the president of Urban Investment Group.   Pursuant to the agreement, Tisdale would advance $90,000 towards the construction of a house for the

city of Cleveland's Home Builders Association. Under the agreement, Tisdale would become an equal partner, his $90,000 advance would be returned, plus an additional $20,000, once the house was constructed and sold.

{¶ 4} On May 3, 2006, Tisdale wire transferred the sum of $90,000 to White's account with Sky Bank. Thereafter, White constructed the house, pursuant to the agreement, and on November 13, 2006, sold the house for the sum of $290,000.

{¶ 5} On March 24, 2008, alleging that White had failed to repay the $90,000 advance, plus the aforementioned $20,000 in profits on the project, Tisdale sued White and Urban Investment Group for breach of contract, fraud, and conversion. On April 17, 2008, White answered Tisdale's complaint and denied the allegations that he failed to honor the terms of the agreement. After significant motion practice, the matter proceeded to a bench trial that commenced on November 20, 2009.

{¶ 6} At trial, Tisdale testified that he was a deputy registrar for the Bureau of Motor Vehicles, a position he has held for approximately ten years. Tisdale testified that White never repaid the $90,000 he had advanced him for the construction of the home, and never paid the additional $20,000, as agreed.

{¶ 7} White testified that he is a real estate developer, who works on a lot of projects for the city of Cleveland. White approached Tisdale about partnering on one such project and agreed to advance $90,000. White testified that once the house was sold, Tisdale immediately started calling and requested his money. White stated that Tisdale wanted the money in cash, because he was concerned about having to pay taxes on the profits.

{¶ 8} On November 14, 2006, the day after the house was sold, White proceeded to withdraw the cash he needed to pay Tisdale. White had to make multiple withdrawals from three separate Sky Bank locations in order to access the cash required. White withdrew the sums of $30,487.14, $29,826.14, and $10,000 from the respective locations. White stated that Brian Slover, an individual who works on several of his projects, accompanied him to the various banks.

{¶ 9} Further, on November 15, 2006, White made two additional cash withdrawals in the amount of $28,000 and $5,125 respectively, proceeded to Tisdale's place of business, and was accompanied by Slover. White stated that Tisdale invited him into his private office, but asked Slover to wait in the lobby. White gave Tisdale $85,000 and asked him to sign a receipt that he had prepared in advance.

{¶ 10} Finally, on December 21, 2006, White met with Tisdale at an AmTrust Bank and gave Tisdale a cashier's check for $5,000, which he

immediately cashed. In addition, White stated that on May 14, 2007, he gave Tisdale a total of $20,500, in cash, and again asked Tisdale to signed a receipt he had prepared in advance.

{¶ 11} Slover, an 11 year employee of the Original Mattress Factory, testified that he helps to maintain several of White's rental properties. In November 2006, Slover accompanied White to several Sky Bank branches, and on one occasion, he went into the bank with White. Slover stated that he did not see how much money White withdrew, but he saw the thick cash envelopes he carried out of the banks.

{¶ 12} Slover testified that he also accompanied White to Tisdale's place of business in November 2006. Slover stated that White had several cash envelopes when he entered Tisdale's place of business. Slover testified that Tisdale had asked him to wait in the lobby, while he and White proceeded to an office in the back. Slover eventually went back to sit in the truck, and when White returned, he no longer had the envelopes, but had a manila folder, and was eating a piece of chicken.

{¶ 13} After hearing all the testimony, the trial court found in favor of White, and Tisdale now appeals.

## Manifest Weight

{¶ 14} In the sole assigned error, Tisdale argues the trial court's judgment is against the manifest weight of the evidence.

{¶ 15} In reviewing a judgment from a bench trial, an appellate court must afford deference to a trial court's decision and "must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court." *Cook Rd. Invests., L.L.C. v. Cuyahoga Cty. Bd. of Commrs.*, Cuyahoga App. No. 95416, 2011-Ohio-2151, quoting *Myers v. Garson*, 66 Ohio St.3d 610, 616, 1993-Ohio-9, 614 N.E.2d 742.

{¶ 16} When making a factual determination, the trial court is in the best position to evaluate the testimony of witnesses and the evidence presented. *Home Builders Assn. of Dayton & the Miami Valley v. Beavercreek*, 89 Ohio St.3d 121, 129, 2000-Ohio-115, 729 N.E.2d 349. Hence, a reviewing court will not disturb factual findings of the trial court unless those findings are against the manifest weight of the evidence. Id. citing, *State ex rel. Shady Acres Nursing Home v. Rhodes* (1983), 7 Ohio St.3d 7, 455 N.E.2d 489.

{¶ 17} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Koblentz & Koblentz v. Summers*, Cuyahoga App. No. 94806, 2011-Ohio-1064, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Further, the weight to be given the evidence and witness credibility are primarily for the factfinder. *Dawson Ins., Inc. v. Freund*, Cuyahoga App. No.

94660, 2011-Ohio-1552, citing *Shore Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333. However, we review application of the law to the facts de novo. *Pottmeyer v. Douglas*, 4th No. 10CA7, 2010-Ohio-5293.

{¶ 18} In the instant case, in addition to the trial testimony, several documents were entered into evidence, including defendant's Exhibit "C," a copy of White's Sky Bank statement for the period of November 1, 2006 through November 30, 2006. The statement supports White's testimony regarding the large cash withdrawals on November 14th and 15th, respectively. White's November 14, 2006, cash withdrawals of $30,487.14, $29,826.14, and $10,000 are reflected therein, as well as his November 15, 2006, cash withdrawals of $28,000 and $5,125.

{¶ 19} In addition to White's bank statement, defendant's Exhibits "D" and "E," the signed receipts for the cash that White testified he delivered to Tisdale, were also entered into evidence. The signatures acknowledging payment and receipt, appears identical to Tisdale's signatures on plaintiff's Exhibit "1," the wire transfer request, and plaintiff's Exhibit "2," the written agreement between the parties.

{¶ 20} Further, defendant's Exhibit "F," a cashier's check made payable to Tisdale was also entered into evidence. The exhibit reveals that Tisdale endorsed and cashed the check on the same date it was issued, which

corroborates White's testimony that Tisdale met him at AmTrust Bank to receive that payment.

{¶ 21} After reviewing the record, we find there is competent, credible evidence to support the trial court's judgment. The trial court's judgment was not against the manifest weight of the evidence. Accordingly, we overrule the sole assigned error.

Judgment affirmed.

It is ordered that appellee recover from appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, PRESIDING JUDGE

MELODY J. STEWART, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR